IN THE UNITED STATES DISTRICT COURT
OF NEW MEXICO

| | |
|---|---|
| Barbara Andersen ) | |
|     Plaintiff ) | Case 20-cv- 00553 |
| v. ) | |
| Forrest Fenn; Unknown Defendant ) | |

**MOTION FOR PROTECTIVE ORDER AND MOTION FOR ZOOM HEARING TO ADDRESS POTENTIAL *IN CAMERA* INSPECTION RELATIVE TO SAME**

    Barbara Andersen, as her own attorney, hereby files this motion for a protective order pursuant to F.R.Civ.P. 5(e)(2) and 26 to preclude nonparty access to the pleadings, transcripts, discovery and exhibits filed in this litigation. In support of the motion, Andersen states as follows:

    1.    Andersen filed suit in the above-captioned matter relative to strange occurrences that occurred relative to her searching for Forrest Fenn's treasure that began in March 2018.

    2.    Andersen solved the final clues of the poem back in 2018. The search area is in a remote area in New Mexico. It was evident that this was part of the solution for, aside from the nine clues all leading to this same "bordered[1]" area, there were many other hints in the books that led to a limited geographical area.

    3.    After solving the end of the poem, Andersen then went backwards and solved (upon information and belief) the balance of the nine clues. Andersen then had to re-solve the poem to advance from the clues to the specific geographic location that she found in the fall of 2019. This second step took Andersen two additional years.

    4.    Upon information and belief, Andersen was filmed at the site location by Forrest Fenn and/or his employees/family/friends since 2018 through June 2020. To date, none of Forrest Fenn's/Andersen's pictures, etc. were made public to any other person aside from Forrest Fenn/Andersen. Andersen's solve and the years of communications with Forrest Fenn have been funny

---

[1]    "Border" is a hint from the Forrest Fenn books.

and proprietary in nature.  For Andersen to reach the final search location, Andersen expended countless hours at the site and in research from March 2018 until June 2020.  Considerable money was spent on Andersen's trips to New Mexico.  Likewise, considerable time was spent away from Andersen's legal matters towards solving this poem.

5. Prior to June 2020, Andersen believed that her efforts would ultimately and potentially be used towards the writing of a book by her and/or Forrest Fenn.  It was quite the experience.

6. Since Andersen filed suit herein, she has been harassed by a variety of people.  First, Forrest Fenn has been followed by layman bloggers and Youtubers over the years called "Fennatics" (i.e. self-described fanatics of Forrest Fenn).  Since the filing of this complaint, Andersen has seen/heard these various "Fennatic" bloggers following these proceedings and, further, harass Andersen on their various youtube/blogs.  This reckless "journalism" has led to Andersen being harassed/attacked on these public forums.  A copy of two layman bloggers posting Youtube videos attacking Andersen and commenting on this Court's recent order is attached hereto as Exhibit A and is incorporated herein by reference.  Not one of these Youtubers/bloggers called Andersen before attacking her on their Youtube/blog sites.

7. In addition to Exhibit A, Andersen has seen attacks against her on the "Hint of Riches" blog site and, further, by youtubers "Kpro", "Cowlazar", Bill Gorman, "Chasing Indy".  Andersen was also told that she was attacked by the Youtubers called a "Gypsy's Kiss". Upon information and belief (based on the viewing counts shown on Youtube), these  "Fennatic" attacks against Andersen have been disseminated to thousands of people.

8. In addition, Andersen was harassed at her own home by a neighbor (Ursula Tripp) who saw the media/Youtube coverage.  This neighbor spit/coughed on Andersen calling Andersen "mentally unwell" and told Andersen that everyone was laughing at her.  Like the Youtubers, this neighbor knew

nothing about Andersen's solve and/or her efforts over the years. She is apparently a simple person who believes anything that she hears on social media/Youtube.

9. These public attacks against Andersen have been in bad faith and with the intent to harass, embarrass and intimidate Andersen.

10. To date, Forrest Fenn remains silent as to who is the "finder" and who is the "retriever" of the treasure. In addition, as will be addressed in the forthcoming motion, there are factual questions as to the public statements and photographs surrounding the purported retrieval of the chest. Andersen has made Forrest Fenn aware of the above, post-complaint harassment[2].

11. In addition to the above and the facts described in the complaint, Andersen was also harassed not only via texting but in her searching. As Forrest Fenn was aware, a dangerous man (an ex-felon) moved into a community within the relevant search area. As this Court can see from the (redacted) attached police report attached hereto as Exhibit B, this man appeared to have serious mental health issues and was a threat to Andersen and the community. Andersen let Forrest Fenn know of same in her e-mail correspondence during the search[3]. Andersen was also harassed by a few other people during her searching. For example, Andersen was punched/dragged down a trailer ramp by a drugged out man named "Shadow" and harassed by a local man named "Lewie".

---

[2]   If this Court reads the books, this Court will see that Forrest Fenn's alligators is named Beowulf. Andersen believes that this is a reference to the Beowulf/Geats story which is akin to the "One Tin Soldier" song about how people respond terribly when faced with greed.

[3]   These dangerous persons were not in the community when Andersen originally began her search in 2018. Andersen does not intend to imply that Forrest Fenn knew of these persons and/or anticipated the dangers that Andersen encountered when he hid the treasure. Upon information and belief, Forrest Fenn teased Andersen about the incident (i.e. her being accused of being a witch) in his April 2020 Scrapbook 253 reference to a "broomstick". Andersen teased Forrest Fenn after this October 2019 incident that she transformed into her various, comedic treasure search characters by invoking the phrase "abracadabra".

3

12. In addition to the above harassment, Andersen has the right to privately maintain her solve with Forrest Fenn and the unknown defendant (see additional, forthcoming motion by Andersen relative to further relief requested of this Court relative to the latter).

13. F.R.Civ.P. 5.2(e) allows this Court to limit proceedings to nonparties:

Federal Rules of Civil Procedure Rule 5.2(e) provides, "[f]or good cause, the court may by order in a case: (1) require redaction of additional information; or (2) limit or prohibit a nonparty's remote electronic access to a document filed with the court." The party requesting a protective order the burden of proving good cause. *McLaurin v. Detroit Ent., LLC,* CIV.A. 09–CV–13174, 2010 WL 750194 (E.D.Mich.2010). In order to establish good cause, the moving party is also required to:

> make a particular request and a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which would be suffered without one....This requirement furthers the goal that the Court only grant as narrow a protective order as is necessary under the facts.

*Id.* (citing *Brittain v. Stroh Brewery Co.,* 136 F.R.D. 408, 412 (M.D.N.C.1991).

In the present case, Defendants claim that the exhibits contain inflammatory material that has no bearing on Plaintiff's cases, and violates the privacy rights of the attorneys mentioned within the exhibits. Because the requests for investigation are not yet substantiated and because of the potential inflammatory nature of this material, the exhibits to Plaintiff's Motion for Reconsideration will be sealed.

*Prentice v. Residential Funding LLC*, 2013 WL 1663868, *3 (E.D.Mich. 2013).

14. Andersen will be filing a motion seeking further relief from this Court in response to this Court's recent order. One of her requests for this Court to consider will relate to discovery against Forrest Fenn as to the identity of the purported unknown defendant herein and facts relative to the purported retrieval. In addition, a motion for protective order pursuant to Rule 26 relative to potential discovery, the Courts have noted as follows:

*"Time for Moving for a Protective Order*
Rule 26(c) provides authority for district courts to issue protective orders, upon the motion of a party or person from whom discovery is sought, if good cause is shown.[1] Subdivision (7) provides for a protective order for trade secrets, confidential research, development, or commercial information.

In order to obtain a protective order, the person must demonstrate good cause. *See generally* 8 Wright & Miller, *Federal Practice and Procedure* § 2035, at 264 (1970). The burden of showing good cause rests with the party requesting the protective order. The party must make a particular request and a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which would be suffered without one. *Gulf Oil v. Bernard,* 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981); and *Deines v. Vermeer Mfg. Co.,* 133 F.R.D. 46, 48 (D.Kan.1990). This requirement furthers the goal that the Court only grant as narrow a protective order as is necessary under the facts. Such demonstrations are preferably made by affidavits from knowledgeable persons and may include *in camera* submissions or *in camera* proceedings attended by opposing counsel. *Reliance Ins. Co. v. Barron's,* 428 F.Supp. 200 (S.D.N.Y.1977); and *In re Halkin,* 598 F.2d 176, 194 (D.C.Cir.1979).

Even though the express language of Rule 26(c) does not set out time limits within which a motion for a protective order must be made, there is an implicit requirement that the motion must be timely, or seasonable, to borrow the term used prior to the amendment of the Federal Rules of Civil Procedure in 1970. *See* Rule 30(b), *Rules of Civil Procedure,* 48 F.R.D. 487, 510 (1970). Prior to the 1970 Amendments, protective order provisions were found in old Rule 30(b) which only pertained to oral depositions.[2] 8 Wright & Miller, *Federal Practice and Procedure* § 2035. The prior rule required that an application for a protective order be made "seasonably" or "promptly." *Id.* at 262, and *Rules,* 48 F.R.D. at 510, and *see* n. 2, *infra.* The 1970 Amendments took the protective order provisions out of old Rule 30(b) and placed them in Rule 26(c). Fed.R.Civ.P. 26(c) now applies to all discovery, including written discovery such as interrogatories, requests for the production of documents and requests for admissions and not just depositions. Even though the new Rule 26(c) does not contain a provision of timeliness, that requirement remains an implicit condition for obtaining a protective order. *Id.* at 262; *Nestle Foods Corp. v. Aetna Cas. and Sur. Co.,* 129 F.R.D. 483, 487 (D.N.J.1990). The failure to timely move for a protective order constitutes grounds for denying the same. *Nestle, supra.*

A motion for a protective order is timely if made prior to the date set for producing the discovery. *In re Coordinated Pretrial Proceedings, etc.,* 669 F.2d 620, 622 n. 2 (10th

Cir.1982) (motion made four days prior to date set for production); *In re Air Crash Disaster at Detroit Metro. Airport,* 130 F.R.D. 627, 630 (E.D.Mich.1989). In determining timeliness, a court should consider all of the circumstances facing the parties. 8 Wright & Miller, *Federal Practice and Procedure* § 2035, at 262–63. Thus, a failure to request a protective order prior to the time set for producing the discovery may be excused for good cause, such as lack of sufficient time or opportunity to obtain the order. *Id.*

Defendant argues, that for written discovery, it is sufficient that it note its objections within the time permitted, and that it should not have to move for a protective order until after the plaintiffs move to compel the discovery. Nothing in Rule 26(c) suggests that there should be such a dichotomy between oral depositions and written discovery. The procedure turns the normal state of obligations on its head. The party seeking the protective order, who has the burden of requesting and supporting it, should also be responsible for initiating the process. Permitting that party to merely note its objections and then sit back and wait for a motion to compel can only serve to prolong and exacerbate discovery disputes.

The obligation to timely move for a protective order applies equally to written discovery as to protective orders for oral depositions. *United States v. International Business Machines,* 70 F.R.D. 700 (S.D.N.Y.1976); *U.S. v. Intern. Business Machines Corp.,* 79 F.R.D. 412 (S.D.N.Y.1978) (protective order untimely when first made in argument on request to reconsider order compelling production). Thus in *Wang v. HSU,* 919 F.2d 130 (10th Cir.1990), the court affirmed the denial of an untimely motion for a protective order which was not filed, nor any objection made, within the period required (ten days after service or prior to the deposition) for a subpoena *duces tecum* by Fed.R.Civ.P. 45(d)(1). And, in *Byrnes v. Jetnet Corp.,* 111 F.R.D. 68, 73 n. 5 (M.D.N.C.1986), a party resisted a subpoena *duces tecum* and filed an objection within ten days or prior to the deposition as required by Fed.R.Civ.P. 45(d)(1). However, it failed to formally move for a protective order for either the deposition or the document request, even after a motion to compel had been filed. The Court, in dicta, held, citing Rule 26(c) and noting the untimeliness, that any objection to producing the discovery based on grounds that it involves a trade secret or confidential trade information, would be denied.

It is not unfair to apply the implicit requirement of timeliness in Fed.R.Civ.P. 26(c), that a motion for a protective order be made prior to the date set for the discovery, to both oral depositions and to written discovery. *United States v. International Business Machines, supra; U.S. v. Intern. Business Machines Corp., supra.* This is true even though written discovery, unlike oral depositions, provides for a written response, where an objection can be made if the information is privileged, confidential or secret. Therefore, defendant's motion for a protective order is untimely unless it can establish good cause to excuse the untimeliness.

6

*Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 412 (M.D.N.C. 1991).

15.     Andersen has the right to privacy as to the multi-year effort relative to her solve, her proprietary photographs, etc.  Andersen also has the right to be free of harassment by the layperson/nonparty "Fennatics" in reviewing and commenting on these court proceedings in an effort to harass Andersen without good faith/justification.  Andersen has become a target of their entertainment/harassment now that the search has concluded.

16.     If this Court wishes to proceed with an *in camera* inspection so as to address the solve location and solve[4], Andersen is willing to participate in same.  Andersen would request a Zoom conference with this Court relative to this motion and, further, status.

17.     Andersen's only caveat relative to an *in camera* inspection is that Andersen had believed that Forrest Fenn did not wish the solve details to be disclosed to anyone except himself.  However, given that Forrest Fenn has elected to remain silent after his public announcement, an *in camera* inspection/hearing appears to be Andersen's only choice at this juncture.

Wherefore, Andersen requests that this Court enter an order in this litigation so as to (a) prohibit pleadings/hearings/transcripts from being made accessible to the nonparty public; (b) prohibit discovery/facts relative to the solve/find/retrieval be made public without the consent of Andersen, Forrest Fenn and the purported, Unknown Defendant's joint consent; (c) to conduct an *in camera* inspection/hearing relative to the solve/efforts of Andersen; and (d) to conduct a Zoom hearing relative to the presentment of this motion and generally.

---

[4]     To best explain the solve location *in camera* to this Court, it would be helpful for this Court to have Forrest Fenn's books or scanned copies of same.  It would also be helpful for this Court to review the "scrapbooks" contained on https://dalneitzel.com particularly those after the Dizzy Dean story of June 2018.

          ___/s/ Barbara Andersen_____

Barbara Andersen, 6256000
1220 West Sherwin, Unit 1E
Chicago, IL 60626
(708) 805-1123
bandersen@andersen-law.com

8