UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| **BARBARA ANDERSEN,** | ) | Case No. 1:20-CV-00553-JFR |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **UNKNOWN DEFENDANT, AND** | ) | |
| **FORREST FENN,** | ) | |
| | ) | |
| Defendants. | | |

**FORREST FENN'S MOTION TO REQUIRE AN AMENDED COMPLAINT BEFORE DISCOVERY PROCEEDS, FOR AN *IN CAMERA* HEARING AND A PROTECTIVE ORDER QUASHING SUBPEONA**

COMES NOW Forrest Fenn ("Fenn"), by and through his undersigned counsel, SOMMER KARNES & ASSOCIATES, LLP (Karl H. Sommer). Pursuant to Rule 45(d), Fenn objects to providing the information sought by Plaintiff Barbara Andersen ("Andersen") on the specific grounds stated below. Based upon those objections, Fenn moves this Court to:

A. Require that, prior to seeking or obtaining any discovery against Fenn, Andersen file her amended complaint to confirm the Court has subject matter jurisdiction over Andersen's claims;

B. Conduct an *in camera* hearing in which the Court can take testimony from Plaintiff (separately and *in camera*) and from Fenn and/or the person who found the treasure chest ("Finder") (separately and *in camera*) to confirm, as demonstrated below, that the Finder and the Unknown Defendant could not be and are not the same person; and

1

C.     Issue an order quashing the subpoena issued on August 17, 2020 (the "Andersen Subpoena" or the "Subpoena").

As grounds for this Motion, Fenn states:

## Subject Matter Jurisdiction

1.     In her Motion for Leave at paragraph 6 (Doc. 12), Andersen asserts that:

> In addition to the fact that there is a question relative to this Court's last ruling, Andersen now faces two additional issues relative to drafting an amended complaint. Here, because Andersen is not seeking to maintain Forrest Fenn as a defendant at this time, ***Andersen cannot allege jurisdiction or venue given that she had no information as to the name/address of the Unknown Defendant.*** (emphasis added)

2.     The Court has held that "Plaintiff _may_ assert a claim against the Unknown Defendant pursuant to 18 U.S.C. § 1030(g) for compensatory damages, injunctive relief, or other equitable relief." (Court's Order at p. 3 of 6) (Doc. 14) (emphasis added) Once Andersen has filed her amended complaint, the Court can confirm that it has subject matter jurisdiction.  To date, Andersen has not properly invoked the jurisdiction of the Court.

3.     The Court has also held that "[v]enue is proper in the District of New Mexico because a substantial part of the events giving rise to Plaintiff's claims occurred within the District of New Mexico. See 28 U.S.C. § 191(b))2) ("A civil action may be brought in ... a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated")."  Venue will lie in this Court.

4.     As the Court's Order demonstrates, neither subject matter jurisdiction nor venue are dependent upon the information Andersen seeks from Fenn.

5.     The Court has observed that "the Unknown Defendant must be identified before this case can proceed." Of course, this is true as a practical matter.  Andersen has

got to find the person whom she claims hacked her electronic devices. But the Court should confirm its own subject matter jurisdiction as a prerequisite to allowing any discovery, and Andersen should not be allowed to conduct discovery of the type sought until the Court has confirmed that it has a case over which it has subject matter jurisdiction.

6. If Andersen fails to state a claim over which the Court has subject matter jurisdiction, she should not be allowed to conduct discovery and the Subpoena should be quashed.

7. If Andersen files an amended complaint stating a claim over which the Court has subject matter jurisdiction, then the Court should conduct an *in camera* hearing to confirm that Fenn is not obligated to comply with the Andersen Subpoena.

### The Court Should Conduct an *In Camera* Hearing

8. As explained fully below, Fenn objects to supplying the information sought by the Andersen Subpoena because (a) the Finder is not the so-called Unknown Defendant, and as a result, there is no a good faith basis for Andersen to obtain the Finder's identity or contact information, (b) the information sought is protected discovery under Rule 45, and (c) the disclosure of the Finder's name, address and telephone number will unnecessarily endanger the Finder.

9. The Court should hold an *in camera* hearing wherein the Court can further confirm that facts asserted by Fenn are true and correct and that the Finder is not the Unknown Defendant.

10. Magistrate Judge Stephan M. Vidmar in *Chavez v. City of Albuquerque,* 60 F.Supp.3d 1179 (US Dist. Ct., D. New Mexico 2014), fashioned a remedy using an *in camera* hearing process in a discovery dispute over the identity and contact information of a witness by requiring *in camera* hearings similar to one Fenn requests here.

11. In *Chavez, supra*, the plaintiff brought an action under 42 USC § 1983 for civil rights violations by police officers who had conducted allegedly illegal searches of plaintiff's place of business as part of a drug investigation. The searches were conducted pursuant to a warrant that was based on affidavits from the officers, who had supposedly relied upon information obtained from a confidential informant. The plaintiff contended that the officers had lied about the confidential informant and that no confidential informant even existed. Plaintiff requested the name, address and telephone number of the confidential informant. The defendant City of Albuquerque objected to providing the name and address of the confidential informant to protect his safety and criminal investigative process. A discovery dispute ensued. In resolving the dispute, Magistrate Judge Vidmar stated, "[i]n searching for a just solution to the discovery dispute herein presented, the Court finds the in camera procedure outlined by the court in *Rodriguez*, 127 F.R.D. at 431, instructive. Therefore, similar to the procedure espoused by *Rodriguez*, the parties will adhere to the following in camera examination schedule and procedure . . .." The court set a schedule for *in camera* hearings from both sides and made an independent assessment concerning the merits of the discovery dispute.

12. The Court can and should use the same *in camera* hearing methodology for resolving this discovery dispute. Namely, the Court should first set a hearing with Andersen *in camera* (without counsel for Fenn or the Finder) wherein Andersen can disclose the Andersen Solve and all of its proprietary information and other matters related to the Unknown Defendant. Second, after the *in camera* hearing with Andersen, the Court should set a hearing for Fenn and the Finder to testify (without Andersen present). The Court can inquire of Fenn as to the meaning of the clues in the Poem and to what location they lead, and inquire of the Finder as to his "solve," and where, when and how he found the Chest. Third, if the Court finds that Fenn's objections are well

4

founded, the Court could have a transcript of the hearings produced and sealed as part of its ruling. This process will protect the interests of all persons and parties concerned.

### The Chase

13. The following gives the detailed bases for Fenn's objections to the Andersen Subpoena, including a detailed fact background supporting the objections.

14. Andersen's suit is the fourth to have been filed against Fenn arising out of treasure hunt (the "Chase") begun in 2010 when Fenn hid a treasure chest (the "Chest") containing gold, jewels and valuable artifacts in the Rocky Mountains, and publicly announced in his self-published memoir entitled *The Thrill of the Chase: A Memoir* (the "Memoir") that he had done so. The Declaration and Supplemental Declaration of Fenn filed in *Erskine v. Fenn,* Case No. CV-20-08123-PCT-JJT (pending in U.S. District Court for the District of Arizona explain some of Fenn's motivations for hiding the Chest. (Attached hereto as Exhibits A and B, respectively)

15. The Memoir includes a poem (the "Poem") written by Fenn that contains nine clues, which if followed correctly would lead would-be searchers to the location of the Chest. (See, Exhibit B, ¶ 5 and Att. 1)

16. Fenn hid the Chest in Wyoming in 2010 and never retrieved or moved the Chest from its hiding spot in Wyoming. (See, Exhibit B, ¶2).

17. Over the last ten years, the Chase was widely publicized, and Fenn gave dozens of public interviews about the Chase. (See, Exhibit B ¶ 10, and Att. 2)

18. On June 5, 2020 – after ten years and searches by thousands of people -- a person unknown to Fenn (the "Finder") contacted Fenn, advised him that he had found the Chest in Wyoming in the exact location that Fenn had left it ten years earlier, and sent pictures to Fenn of the Chest. (See, Exhibit B, ¶ 5).

5

19.     On June 6, 2020, Fenn made a public announcement *via* the internet blog located at www.neitzel.com that the Chest had been found and retrieved and said specifically "So, chase is over." (See, Exhibit B, ¶ 17)

20.     Fenn then met the Finder in person in New Mexico. The Finder confirmed that he had found the Chest in the location Fenn had hidden it utilizing the clues in the Poem. Fenn personally examined the contents of the Chest as part of his verification that the Chest had been found. (See, Exhibit B, ¶ 7)

21.     On June 22, 2020, Fenn announced through the same blog that the Chest had been hidden and found in Wyoming.

22.     Since the Chest was found, many searchers have demanded on the internet -- often in threatening and angry terms – that Fenn release the identity of the Finder, disclose the exact location where he found the Chest, and how he found it, i.e., his solve.

23.     Fenn committed to the Finder, and indeed had publicly committed throughout the treasure hunt, that if someone found the Chest, Fenn would keep the identity of the person who found the Chest and the location confidential. (See, Exhibit B, ¶ 22)

## Anderson's Claims

24.     Andersen claims the so-called "Unknown Defendant" somehow electronically "hacked" her phone and/or computer and stole her "solve," consisting of her private, proprietary information identifying the location of the hidden Chest Andersen had divined using the clues in the Poem, conducting research, and searching the location in New Mexico over the course of several years.

25.     According to Andersen's repeated public statements, her "solve" leads to an area in Northern New Mexico. Andersen claims that on June 6, 2020 she was in fact

in New Mexico, poised to retrieve the Chest from the spot *in New Mexico* where she had concluded the Chest was located, when Fenn announced that Chest had been found.

26. Andersen filed her suit on June 8, 2020 making claims against the Unknown Defendant and requesting an injunction against the Unknown Defendant and Fenn.

27. It was not public knowledge on June 8, 2020 that the Chest had been hidden by Fenn and found by the Finder *in Wyoming*.

28. Anderson asserts that she -- not the Unknown Defendant -- is entitled to the Chest, because the Unknown Defendant wrongfully obtained it by stealing Andersen's private, proprietary information containing the location of the Chest in New Mexico, following her to the site *in Northern New Mexico* where Andersen had narrowed her search, and taking the Chest just as she was about to retrieve it.

29. Andersen requests the identity of the Finder to join him as defendant in this case in the place of the Unknown Defendant.

30. Andersen's request is justified *only if the Finder and the Unknown Defendant are the same person.*

**The Finder and the Unknown Defendant CANNOT BE the Same Person**

31. Taking Andersen's allegations about the Unknown Defendant as true and considering the facts found in Fenn's sworn Declaration and Supplement Declaration, the following must be the case:

    a. In 2010, Fenn hid the Chest in Wyoming and never retrieved or moved it from that hiding place in Wyoming;

    b. In 2018, Andersen developed a "solve" identifying a location in Northern New Mexico where she believes the Chest was hidden.

7

  c. Andersen stored the solve and/or enough of her research, communications about the Andersen Solve, and/or other proprietary research and information that would lead someone to a place in Northern New Mexico where Andersen claims the Chest was hidden (the "Anderson Solve").

  d. The Unknown Defendant hacked into Andersen's electronic devices, stole the Andersen Solve and surreptitiously followed or surveilled Andersen.

  e. The Unknown Defendant used the Anderson Solve and/or followed Anderson to a place in Northern New Mexico, where the Chest was NOT hidden.

  f. On the weekend of June 5, 6 and 7, Andersen was in New Mexico, and heading to the spot in Northern New Mexico that the Andersen Solve identifies as the hiding spot of the Chest.

  g. On June 5 the Finder informed Fenn that he had found the Chest in Wyoming where Fenn had left it.

  h. The Finder could not have used the Andersen Solve to Find the Chest.

32. The conclusion that the Finder and the Unknown Defendant are not the same person is inescapable.

### Andersen's Request for Discovery Lacks Justification

33. The Court entered a Memorandum Opinion and Order on August 14, 2020 [Doc 14] (the "Court's Order") allowing Plaintiff to proceed under Rule 45 to serve a subpoena upon Defendant Fenn.

34. The Court's specific permission allowing Andersen to proceed is found in the following statement in the Court's Order:

> The Court finds there is good cause to grant, in part, Plaintiff's request for discovery before the Rule 26(f) conference because the Unknown Defendant must be identified before this case can proceed

8

> and ***Plaintiff has established a good faith basis that Forrest Fenn knows the Unknown Defendant's name and Address***. The Court allows Plaintiff to seek limited discovery from Forrest Fenn to obtain the identity and address of the Unknown Defendant. (emphasis added)

(Court's Order (Doc.14) at p. 5 of 6)

35. Andersen's Subpoena commands Fenn to "produce the name, address, phone number and e-mail address of the Unknown Defendant(s) who found the treasure chest or its proxy hidden by Forrest Fenn."

36. The indisputable facts demonstrate that the Unknown Defendant did not find the Chest.

37. Because Andersen has not served Fenn with the Summons and Complaint (Doc. 1), Fenn was not made a party to this action and did not have the opportunity to respond to Andersen's Motion for Leave (Doc. 12).

38. If Fenn had been made a party to the suit, Fenn would have objected to discovery outside the normal restrictions under Rule 26(f) on the grounds raised in this Motion. Namely, the identity of the Finder – who is not the Unknown Defendant – is not discoverable under even the broad parameters of Rule 26b(1), which allows a party to obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."

39. As observed by Magistrate Stephan M. Vidmar in *Chavez v. City of Albuquerque*, 60 F.Supp.3d 1179 (US District Court, D. New Mexico 2014):

> A district court is not, however, "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." *McGee v. Hayes*, 43 Fed.Appx. 214, 217 (10th Cir.2002) (unpublished). *See Tottenham v. Trans World Gaming Corp.*, 2002 WL 1967023, at *2 (S.D.N.Y.2002) ("Discovery, however, is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.") (citation omitted). "[B]road discovery is not

without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Gomez,* 50 F.3d at 1520. Courts have recognized that, while it is true that relevance in discovery is broader than that required for admissibility at trial, the "object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." *Zenith Electronics Corp. v. Exzec, Inc.,* No. 93 C 5041, 1998 WL 9181, at *2 (N.D.Ill.1998) (quoting *Piacenti v. General Motors Corp.,* 173 F.R.D. 221, 223 (N.D.Ill.1997)). Further, the information must be "reasonably calculated to lead to the discovery of admissible evidence." *Id.* Courts have also recognized that "[t]he legal tenet that relevancy in the discovery content is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." *Id.*

40. In this matter, Andersen seeks the identity of the Finder who has no connection with her claims against the Unknown Defendant.

41. There is no "good faith basis" to believe that Fenn has information that "is relevant to any [of Andersen's] claim" under Rule 26.

42. In short, there is no basis or justification to permit discovery of the identity of the Finder.

### The Identity of the Finder is Protected Under Rule 45

43. Disclosure of the identity and contact information of the Finder will be a violation of the agreement of confidentiality to which Fenn is subject with the Finder.

44. Under Rule 45C(3)(B)(i) a person cannot be compelled to disclose a trade secret or other confidential research, development, or commercial information.

### The Disclosure of the Identity of the Finder will Subject the Finder Unnecessarily to Danger

45. Disclosure of the identity and contact information of the Finder may subject the Finder unnecessarily to danger from third parties.

46. Over the course of the Chase, Fenn and his family have endured threats to their person and their property by people looking for the treasure. (*See* Articles from Santa Fe New Mexican attached as Exhibits C and D).

47. Fenn recently received an e-mail from a searcher who alerted Fenn to an anonymous and threating video from someone on the internet, which can be viewed at the following URL: https://www.youtube.com/watch?v=cI2bl0EAfWQ.

48. It is highly likely that the Finder will be immediately subjected to the type of harassment, threats and danger that Fenn and his family have endured if the Finder's identity is publicly disclosed.

49. Jeopardizing the Finder's personal safety is particularly unjustified because the Finder has nothing to do with Andersen's claims against the Unknown Defendant.

50. In summary, Fenn asserts that this Court should require Andersen to state claims that fall within the subject matter of the Court, and to date she has not. Further, Fenn maintains that an *in camera* hearing process will confirm for the Court that Fenn's objections to the Andersen Subpoena are factually and legally well found and will simultaneously protect the vital interests of Andersen, Fenn and the Finder.

51. Pursuant to Local Rule 7.1(a), the undersigned counsel has sent an e-mail to Andersen attempting in good faith whether she opposes this Motion. Counsel has not heard back from Anderson, but because of the nature of this Motion it is assumed that she opposes the Motion. If Andersen does not oppose the Motion, the undersigned will immediately inform the Court.

WHEREFORE, Defendant Fenn requests that the Court (a) require Andersen to file an amended complaint stating a claim over which the Court has subject matter jurisdiction, (b) hold the *in camera* hearings as described above, and (c) enter a protective order quashing the Andersen Subpoena for the reasons stated above.

        Respectfully submitted,

        SOMMER KARNES & ASSOCIATES, LLP

        Attorneys for Defendant Fenn

        By: /s/Karl H. Sommer
          Karl H. Sommer
          Post Office Box 2476
          Santa Fe, New Mexico 87504
          (505) 989-3800
          khs@sommerkarnes.com

## CERTIFICATE OF SERVICE

The undersigned certifies that a true copy of the foregoing Motion was submitted and served via email this 31st day of August 2020 to Plaintiff:

Barbara Andersen
Plaintiff, *Pro Se*
1220 W Sherwin, unit 1E
Chicago IL 60626
bandersen@andersen-law.com

        /s/ Karl H. Sommer
         Karl H. Sommer