IN THE UNITED STATES DISTRICT COURT
OF NEW MEXICO

| | | |
|---|---|---|
| Barbara Andersen | ) | |
|     Plaintiff | ) | Case 20-cv- 00553 |
| v. | ) | |
| Forrest Fenn; Unknown Defendant | ) | |

## RESPONSE TO MOTION TO QUASH AND OTHER RELIEF [DKT 17] AND COUNTER-MOTIONS TO COMPEL AND TO STRIKE

Barbara Andersen, as her own attorney, hereby files this response to the Motion to Quash [Dkt. 17] filed by Forrest Fenn and counter-motions to compel. In support of the motion Andersen states as follows:

## Introduction

1. Andersen served Forrest Fenn and counsel a subpoena. A true and correct copy of the subpoena is attached hereto as Exhibit 1 and is incorporated herein by reference. The subpoena asks for the identity of the finder, the retriever and the party who possesses the chest. See rider.

2. Andersen previously similarly asked for information in e-mail correspondence to counsel. A copy of that correspondence is attached hereto and is incorporated herein by reference as Exhibit 2. To date, counsel has still not responded to same. At this point, while the questions still remain, they are not yet before this Court.

3. Mr. Fenn attaches two affidavits from the Erskine case to the motion to quash. Andersen is not a party to that case and, further, her solve is not in Colorado. Mr. Fenn offers no affidavit relative to Andersen and/or Andersen's solve in his Motion to Quash.

4. Mr. Fenn makes arguments on behalf of the purported "Finder". The "Finder" did not seek to independently file a Motion to Quash. Mr. Fenn does not explain why the Finder does not independently file a motion (i.e. under a "Doe" alias).

1

5.     Mr. Fenn offers two mug shots as purported evidence of prospective, speculative harassment to the "Finder".  See Motion to Quash Exhibits C and D.

6.     Mr. Fenn cites to only one legal decision in his entire brief, *Chavez v. City of Albuquerque*, 60 F.Supp.3d 1179 (D. N.M. 2014) to imply that Andersen is going on a "fishing expedition"[1] in her limited inquiry contained in Exhibit A.

For the reasons stated below, Andersen asks that this Court deny the Motion to Quash and Motion for a Protective Oder.

**<u>Standard Relative to a Motion to Quash</u>**

7.     The standard relative to discovery is as follows:

> Federal courts have held that the scope of discovery under rule 26 is broad. See <u>Gomez v. Martin Marietta Corp.</u>, 50 F.3d 1511, 1520 (10th Cir. 1995); <u>Sanchez v. Matta</u>, 229 F.R.D. 649, 654 (D.N.M. 2004)(Browning, J.)("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant information."). The federal discovery rules reflect the courts' and Congress' recognition that "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." <u>Hickman v. Taylor</u>, 329 U.S. 495, 507, 67 S. Ct. 385, 91 L. Ed. 451 (1947).

*XTO Energy, Inc. v. ATD, LLC*, 2016 U.S. Dist. LEXIS 57050, *40

8.     In seeking relief relative to subpoenas under F.R.Civ.P. 45, the movant bears the burden of persuasion:

> The party seeking work product protection has the burden of showing that it applies. *See Ennis v. Anderson Trucking Serv., Inc.,* 141 F.R.D. 258, 259 (E.D.N.C. 1991); *see also Malibu Media, LLC v. John Does 1-15,* No. CIV.A. 12-2077, 2012 U.S. Dist. LEXIS 105768, 2012 WL 3089383, at *5 (E.D. Pa. July 30, 2012) ("The party seeking to quash the subpoena bears the        of demonstrating that the requirements of Rule 45 are satisfied."); *Sea Tow Int'l, Inc. v. Pontin*, 246 F.R.D. 421, 424 (E.D.N.Y. 2007) ("The burden of persuasion in

---

[1]   For this Court's edification, fishing is a theme in Mr. Fenn's books and in Andersen's solve.  It appears that Mr. Fenn is being koi/coy with this Court/Andersen in referencing same.

a motion to quash a subpoena . . . is borne by the movant." (quotation and citations omitted)); Wright & Miller, supra, § 2459 ("As numerous cases have held, the movant has the burden of persuasion on a motion to quash a subpoena."). "In meeting this burden, such party may not rely on conclusory allegations or mere statements in briefs." *Suggs v. Whitaker*, 152 F.R.D. 501, 505 (M.D.N.C. 1993). The party meets this burden by providing "specific demonstration of facts supporting the requested protection[.]" Id. Preferably, this demonstration is made "through affidavits from knowledgeable persons." Id. If a party fails to meet this burden, the party's motion will be denied.

*Ellis v. Arrowood Indem. Co.*, 2014 U.S. Dist. LEXIS 121913, *18-19 (S.D. W. Va. 2014)

**Third-Party/Subpoena Recipient Fenn Has No Standing to Challenge the Jurisdiction of this Court and/or Andersen's Request for Discovery**

9. Mr. Fenn filed a brief in response to a limited subpoena inquiry. Without any citation to legal authority, Mr. Fenn apparently wants to come in and take over Andersen's case and make arguments on behalf of the purported "Finder".

10. First, with no legal citation, Mr. Fenn argues that Andersen has not yet plead a complaint that alleges subject matter jurisdiction. See Motion to Quash pp. 1-2. As such, Mr. Fenn has done nothing to substantiate or meet his burden in his F.R.Civ.P. 45 Motion to Quash.

11. Here, Fenn denies that he is the purported "Finder"[2]; because he is not the "Finder", Mr. Fenn has no standing to challenge Andersen's complaint and/or make any legal arguments except within the strict confines of the subpoena. *Dillon Auto Sales, Inc. v. Troutner*, 2015 U.S.Dist. Lexis 166380, 11 (D.Neb. 2015); *Malibu Media v. Doe*, 2018 U.S.Dist. Lexis 194193, 7-8 (S.D.N.Y. 2018).

12. Moreover, there is no affidavit by Mr. Fenn. For example, why is the "Finder" not raising this argument? Presumably, Mr. Fenn advised the purported "Finder" of the

---

[2] Fenn avoids answering who is currently in possession of the Chest. Many suspect that Fenn has the chest in his possession.

subpoena.  Why did they not come before this Court (under a Doe name) and file his own motion?  (Or simply pick up the phone and call Andersen?)

13. In sum, Mr. Fenn has no standing to make objections as to Andersen's pleadings and/or discovery.  He is not a party to this litigation at this point in time.  As such, his objections should be limited to the strict confines of the subpoena.

**Mr. Fenn Offers No Affidavit as to Andersen's Solve**

14. Prior to bringing this motion, Mr. Fenn attempted to persuade Andersen that the "find" was in Wyoming[3].  However, Andersen (again) challenged same by asking him (a) to disavow in whole or in part Andersen's solve in a verified pleading; (b) to respond to whether the "Finder" solve included Andersen's solve in whole or in part; and (c) to affirmatively state who "Joe" is[4].

15. Here, despite Exhibits A and B, Mr. Fenn will not answer direct questions by Andersen relative to her solve and the conclusion of the "Chase".  Andersen is obviously not Mr. Erskine and, as such, Mr. Fenn's affidavits have nothing to do with Andersen and/or her solve.

16. Given that the burden is on Mr. Fenn to offer "specific demonstration of facts", Mr. Fenn's Motion to Quash should be denied for continuing to fail and refuse to offer "specific demonstration of facts" in the form of affidavit or otherwise.  Conclusory arguments with bare-bone legal authority is not a sufficient response under F.R.Civ.P. 45.

---

[3] Given Mr. Fenn's proclivity to tell tall tales and play word games, many question whether Wyoming is actually the state of Wyoming and/or whether the chest was not hidden at the solve location.  This is particularly true given that (a) many searchers have suggested that the photos surrounding the found chest are allegedly photo-shopped and suspect and (b) Mr. Fenn recently publicly stated that people are still searching for the chest (thus implying that the "Chase" is not truly over).

[4] To the extent that Mr. Fenn attempts to disclaim that the "Finder" is not Andersen's "Joe Stalker"; Mr. Fenn (a) has provided no affidavit by him or the "Finder"; (b) would lack personal knowledge as to the Finder's communications (or lack thereof) to Andersen; and (c) would be attempting to interject improper hearsay into these proceedings.  As such, Mr. Fenn cannot make any statement as to who "Joe" is or is not.

4

17.     Mr. Fenn's conclusory argument that the Finder "CANNOT BE the same person [as the Unknown Defendant]" (Motion p. 7-8) does not logically follow.  Certainly the Finder can be the same person is the solve was in whole or in part in New Mexico.   Why Mr. Fenn does not simply disclose the solve remains a mystery.

**The Erskine Affidavits**

18.     In an effort to avoid Andersen, Mr. Fenn does a "bait and switch" move by attaching affidavits relative to Mr. Erskine.  Given that Andersen already saw these affidavits and her follow-up questions [Exhibit B] remain unanswered, it is unclear why we Mr. Fenn is relying on these affidavits yet again.

19.     Below are some of the issues with the Erskine Original Affidavit (Exhibit A to the Motion to Quash)[5]:

    a.    Par 1: Mr. Fenn omits that he gives freely discussed that he is also a prankster and effectively given himself a 15% cushion to lie/mislead in the Thrill of the Chase;
    b.    Par. 2: Mr. Fenn corrects his typo as to his cancer diagnosis in Exhibit B;
    c.    Par 6: The statement "in the mountains somewhere north of Santa Fe is correct"; there is no interview provided as to the claim that he historically claimed that it was hidden in the "Rocky Mountains".  See below response to the Supplement.

        In addition, Mr. Fenn does not claim that the solve location is not in Andersen's area in whole or in part (i.e. in New Mexico).  Mr. Fenn also gives no independent evidence of proof of the actual hiding/finding.
    d.    Par.s 7-8: Mr. Fenn omits: (a) discussing who profited from the books after the original "Thrill of the Chase"; (b) whether he had a financial interest in the blogs; (c) whether and how much he made in selling his personal belongings from his estate while the "Chase" was pending; (d) whether he had a financial ownership interest in Collected Works and/or the blogs; and (e) whether his friends financially benefitted from the sale of the various books.  Andersen recalls Mr. Fenn stating that his family/friends financially benefitted from the books sold after the "Thrill of the Chase".  In addition, this paragraph is inconsistent with Mr. Fenn's "trade secret" argument below.
    e.    Par. 9: Omits that he has given numerous press interviews and, further, would frequently voluntarily put out Scrapbooks…which kept the interest in the "Chase" alive.

---

[5]     Andersen makes no comment on Mr. Erskine's solve or litigation.  Andersen simply examines the Fenn affidavits due to the fact that he reincorporated them herein.

    f.      Par 14: Objection. Calls for a legal conclusion as to whether or not there was a contract with the public. (For example, an author/publisher could potentially be held liable where fraud is involved. *See Pfau v. Mortenson*, 858 F.Supp.2d 1150, 1159 (D.Mont. 2012)("The Second Circuit's principle that a news publisher is not in privity with the publication's purchasers, **absent "fraud amounting to deceit,** libel, or slander" is, however, persuasive.")(emphasis added).

    g.      Par 15: Objection hearsay as to the communications by the third party "searcher" as to his request for anonymity and his communications relative to how he purportedly found the chest. F.R.Civ.P. 801 and 802. In addition, the searcher's purported request for anonymity is undermined by Mr. Fenn's new "trade secret" argument below. Paragraph 31(g) of the Motion to Quash is also improper for the same reason.

             In addition, there is no statement as to the "searcher's solve" relative to Andersen's solve and/or whether only one chest was hidden.

    h.      Par. 16: Mr. Fenn does not state that the "solve" location is the identical location of the "found" location. Mr. Fenn also provides no documentation/photographs of the hiding and finding of the treasure that are true and correct copies of same under the best evidence rule. F.R.Civ.P. 1002. To date, the public has only seen photographs that are allegedly photo-shopped/suspect. Mr. Fenn makes no effort to negate those allegations.

20.      There are also additional issues with the supplemental affidavit filed in the Erskine case (re-attached as Exhibit B to the Motion to Quash):

    a.      Par 2: Mr. Fenn does not support the allegation that he hid the chest in the "Rocky Mountains" with any press release/interview quote. He has commonly stated that it was hidden generally in the mountains north of Santa Fe. https://www.fftreasure.com/uncategorized/hidden-somewhere-north-santa-fe-nm/

    b.      Par. 3: claims that he hid the chest in Wyoming in 2010; however, the early press coverage never mentioned anywhere other than New Mexico. See for example the 2013 press coverage on the Today Show referenced the chest being hidden in New Mexico https://www.youtube.com/watch?v=Ffn_IPVHIc; and see also https://www.pressreader.com/usa/pasatiempo/20101022/281861524869969. Mr. Fenn's press releases as to where the chest was hidden (i.e. outside of New Mexico) only grew after the interest in the "Chase" went national.

             In addition, Mr. Fenn offers no photographic evidence to support his claim that he actually hid the chest in the same location that it was purportedly found. Further, Mr. Fenn offers no affidavit that the solve location is the same spot where the solve location is (in whole or in part).

    c.      Par. 6: Several searchers have challenged the veracity of this statement. Specifically, several searchers have challenged that Mr. Fenn has also stated that he would give title to the solver of the poem and that it was not necessary to actually find/retrieve it.

    d.    Par. 7: Objection, the summary of the purported contents of the e-mails of the purported third party "Finder": (a) violate the Best Evidence Rule and (b) violate the prohibition against hearsay. F.R.Evid. 801, 802 and 1002.

        In addition, there is no evidence that who this Finder is; whether he was retained by Fenn; whether he solved the poem; whether he relied on Andersen's solve and/or communications (in whole or in part); whether the solve leads one to this location; where in Wyoming the chest was (i.e. on his own personal property, etc.). This paragraph also omits (a) showing the e-mails of the purported "Finder" (even in a redacted form); (b) showing this Court true and correct photos of the chest and the "find"; and (c) explaining why there are allegations that the photos surrounding the "find" and of the "found chest" are photo-shopped.

    e.    Par. 8, 13: Mr. Fenn does not disclose the balance of his motivations behind the "Chase"/solve.

    f.    Par 9 – 16: See paragraph 6 above. His claim that he has stated that only the finder may claim the chest is challenged.

    g.    Par 17: Does not explain why "canopy of stars", the Willow branch[6], the Mount Rushmore photo-shopped picture; and what appears to be a photo-shopped, blurred picture of Andersen and her dog are in the "find" pictures. See Exhibit 3 (labeled by Andersen) as to latest bizarre, alleged photo-shopped picture.

    h.    Par 22: Objection. The wishes/thoughts/comments of the third party purported "Finder" are hearsay and should be stricken. F.R.Evid. 801 and 802. In addition, Mr. Fenn undermines the purported justification for keeping the solve quiet in his trade secret argument (discussed below).

    i.    General omissions from Exhibits A and B: Does not explain why Andersen discovered clear clues from the book during her two year search of her search location; does not explain why the key word links all of Andersen's clues to the same site; does not explain why Andersen was encouraged by the blogs and Fenn to continue searching; does not explain why Andersen was pranked; does not explain why Fenn would have personal knowledge about the prank calls; does not identify who pranked Andersen; does not explain the person knows details relative to Andersen's searches/solve; does not explain if multiple chests were hidden[7]; does not explain the strange photo-shopping of the purported finding of the chest; does not explain where the chest is now; does not explain why Andersen was encouraged to continue searching by Fenn through scrapbooks and Fenn's hidden blog characters; and does not explain why Andersen's/Fenn's blog posts on the website Mysterious Writings have been deleted.

---

[6]     Andersen used "Willowtree" as her blog name..

[7]     Last week, to add to the confusion, Mr. Fenn stated that people are still searching notwithstanding his June 2020 "find" announcement. Many are now speculating that Mr. Fenn hid multiple chests. If this is the case, Mr. Fenn should publicly state as such.

**Mr. Fenn Offers No Factual or Legal Support as to How the Limited Questions in the Subpoena Constitute an "Undue Burden" for Purposes of F.R.Civ.P. 45**

21. At pages 10-11, Mr. Fenn argues that this Court should prohibit Andersen from learning the identity of the finder/retriever/possessor of the chest on the additional argument that disclosing the identity of the "Finder" would be burdensome. See pp. 10-11 of the Motion to Quash. Mr. Fenn offers no affidavit from either himself or the "Finder" to support this section of the argument. As such and again, Mr. Fenn has failed to meet his burden of persuasion under F.R.Civ.P. 45(d).

22. Moreover, Mr. Fenn seems to be arguing that the disclosure of the finder/retriever/possessor of the chest is a "burden". Again, Mr. Fenn offers no legal precedent under F.R.Civ.P. 45(d) and/or what constitutes an "undue burden" pursuant to same. So, again, as a matter of law Mr. Fenn's motion fails for failure to legally support his requested relief pursuant to his burden of persuasion.

23. The question of "burden" under Rules 45 and 26 is restricted to analyzing the harm relative to responding to the subpoena. *Brown v. Sperber-Porter*, 2017 U.S. Dist. LEXIS 226244, *8-9 (D.Ariz. 2017)("Rule 45(d)(3)(A)(iv) provides that a court must quash a subpoena if it "subjects a person to undue burden." However, the "undue burden" language in Rule 45, and Rule 26, "is limited to harm inflicted in complying with the subpoena," and not to "related follow-on issues such as whether the subpoenaed information is potentially protected by privilege." *Mount Hope Church v. Bash Back*!, 705 F.3d 418, 427-28 (9th Cir. 2012); *see also In re Yassai*, 225 B.R. 478, 484 (C.D. Cal. 1998) (citing *In re County of Orange*, 208 B.R. 117, 120 (S.D.N.Y. 1997) (stating that "[c]ommon examples of undue burden include: 'untimely service, inability to appear, inability to produce requested documents or things, failure to identify items

requested, or excessive costs.")).  Here, Mr. Fenn has not explained why he cannot answer the simple questions posed to him by Exhibit A.

**Mr. Fenn's Lacks Standing to Argue Undue Burden or Any Other Argument on Behalf of the "Finder"**

24. Mr. Fenn next argues that the purported "Finder" will be "burdened" if his identity is disclosed to Andersen.  Mr. Fenn argues that because he was purportedly harassed, so will the purported Finder if named by Andersen in an Amended Complaint.  Mr. Fenn attaches mug shots of two third parties as Exhibits C and D to his motion as purported evidence of two individuals who purportedly harassed him.

25. First, as to Exhibits C and D, Mr. Fenn cannot lay a foundation for Exhibits C and D.  As such, Andersen asks that this Court strike Exhibits C and D as unsupported by affidavit testimony and for want of foundation.

26. Second, despite the fact that it is his burden of persuasion, Mr. Fenn again fails to offer any legal precedent under Fed.R.Civ.P. 45 as to why the question of purported burden on the "Finder" is relevant to the motion to quash.

27. Third and again, Mr. Fenn does have standing to make arguments on behalf of the purported "Finder".  See cases cited *supra*.  Here, Mr. Fenn claims that he is not the "Finder".  As such, he lacks standing to raise concerns on behalf of him.  Here, the only person who has standing to raise the argument of undue burden is the "Finder".  The "Finder" has not filed any motion to quash.  Likewise, Mr. Fenn has not offered any affidavit that the "Finder" is unaware of Andersen's subpoena.  Finally, assuming that the "Finder" is aware of Andersen's subpoena, Mr. Fenn does not explain why they have not come forward to independently object to the subpoena and/or contact Andersen to discuss the solve/find, etc.

**Mr. Fenn's Burden Arguments Relative to the "Finder" Lack Foundation, Sworn Testimony and Are Merely Speculative**

28.     Mr. Fenn attempts to argue on behalf of the "Finder" that Andersen's request for his identity will cause burden vis-à-vis the public disclosure of Andersen's Amended Complaint. Yet again, Mr. Fenn offers no legal precedent or analysis as to why this is relevant to the limited issue of complying with the subpoena and the limited questions under Fed.R.Civ.P. 45.

29.     Second, Mr. Fenn seems to be attempting to interfere with Andersen's ability to investigate her own complaint.  Here, Andersen has asked for the contact information of the "Finder".  How is it an undue burden that Andersen receive this information?   As a 20+ year member of the Illinois bar and in good standing, Andersen is certainly capable of picking up the phone and talking to the Finder.  There is nothing burdensome in this first step[8].

30.     Third, Andersen has not requested the assistance of Mr. Fenn's counsel in determining how she will proceed once she reaches out to the Finder.

31.     Fourth, in the event that Andersen proceeds with the filing of an Amended Complaint and names the "Finder", Mr. Fenn has offered no argument as to how he has standing to dictate whether or not Andersen may name the "Finder" as a defendant.  Again, those arguments are for the "Finder" (alone) to make.  Andersen has already stated to this Court that she does not intend to name Mr. Fenn to the Amended Complaint at this juncture.

32.     Fifth, assuming that Andersen proceeds with the filing of an Amended Complaint, Mr. Fenn has not shown any evidence that the purported "Finder" will in fact be burdened. *Dillon Auto Sales, Inc. v. Troutner*, 2015 U.S.Dist. Lexis 166380, 11 (D.Neb. 2015)("Likewise,

---

[8] Indeed, if the Finder shows Andersen evidence of the solve, pictures that are not photo-shopped of the find/retrieval of the chest and the solve makes sense, Andersen may elect to voluntarily dismiss this case without prejudice (with the right to reinstate).

Plaintiff does not state how BKD's compliance with the subpoena will subject either Dillon Auto or BKD to undue burden.")

34.     Sixth, Mr. Fenn's burdensome/harassment argument is ironic in light of the fact that Mr. Fenn and his counsel are both aware that two women by the name Kristy and Candy have both been extensively harassing Andersen on YouTube and a website by the name of "Hint of Riches".  Notwithstanding this actual (i.e. not speculative) harassment (including publication of personal information relative to Andersen), neither Mr. Fenn nor his counsel have taken any steps to direct these persons to cease their harassment.

35.     Seventh, this Court has already ruled that Andersen may not close these proceedings/pleadings to the public based on a harassment argument at this juncture.  As such, there is no legal or factual reason why the "Finder" and/or Mr. Fenn should be able to blockade this case from moving forward and/or public review.

36.     Eighth, if the "Finder" experiences harassment from being named as a party, the "Finder" can seek relief from this Court and/or legal authorities.  There is no legal or factual reason as to why speculative claims of future harassment should prohibit Andersen from moving forward herein.

**Mr. Fenn's Trade Secret Argument is Irrelevant to the Pending Subpoena**

37.     Mr. Fenn also argues that the pending motion should be quashed on the purported basis that the subpoena is protected by a trade secret and a confidentiality agreement.

38.      First, Mr. Fenn offers no legal and/or factual basis as to why the pending subpoena for the contact information of the finder/retriever/solver is a trade secret.  Obviously, it is not.

39. Second, despite the fact that it is his burden, Mr. Fenn offers no legal and/or factual basis as to why the pending subpoena for the contact information is otherwise confidential and/or protected. In support of this request, Mr. Fenn offers: (a) no affidavit from Mr. Fenn or the "Finder"; (b) no (even redacted) copy of the purported confidentiality agreement; and (c) no legal reason as to why the subpoena (i.e. a court order) cannot pierce through any confidentiality agreement between Mr. Fenn and the "Finder".

40. Indeed, Mr. Fenn wholly avoids any analysis of the subpoena and/or rider itself. As such, Andersen contends that Mr. Fenn has waived any challenge to same.

**Mr. Fenn's Trade Secret and Confidentiality Argument is Not Supported Legally or Factually For Purposes of F.R.Civ.P. 45**

41. Instead, Mr. Fenn uses this subpoena to attempt to interject himself in this litigation by anticipating that Andersen will be addressing the solve with the Finder after she receives the contact information. Obviously, Mr. Fenn is trying to raise obstacles to Andersen that are not even at issue yet and/or his to make.

42. Jumping ahead to the inevitable solve question, Mr. Fenn contends that the solve is a trade secret. Assuming arguendo that this Court wishes to hear argument on that question at this juncture, Mr. Fenn yet again offers no legal or factual argument/basis for same.

43. For example, how as a matter law is a solve to a puzzle book/poem a "trade secret"? Mr. Fenn does not say relative to his motion to quash and protective order. For example, in *Brown v. Sperber-Porter*, 2017 U.S. Dist. LEXIS 226244, *15-16 (D.Ariz. 2017), the District Court found that unsupported, conclusory arguments that something is or is not a trade secret are insufficient when seeking relief under F.R.Civ.P. 45.

44. Likewise, Mr. Fenn offers no legal or factual substantiation in support of the fact that the solve is protectable as "confidential information". *Brown v. Sperber-Porter*, 2017 U.S.

Dist. LEXIS 226244, *9-10 (D.Ariz. 2017), ("Conclusory objections and mere assertions of or disclosure of confidential information are insufficient to support a motion to quash. *Dillon Auto Sales, Inc. v. Troutner*, 2015 U.S. Dist. LEXIS 166380, 2015 WL 8664224, at *4 (D. Neb. Dec. 11, 2015).")

**Mr. Fenn's Trade Secret Arguments (Even if Properly Raised) Undermine His Arguments Made in the Erskine Case and Exhibit A**

45.     In addition to the fact that Mr. Fenn does not develop his "trade secret" argument, Mr. Fenn inadvertently undermines the arguments that he recently made to the District Court in Arizona on the Erskine case.  Specifically, in the Erskine case, Mr. Fenn (through the same counsel) argues that the case should be dismissed on the basis that there is no contract between him and Mr. Erskine.  Mr. Fenn attaches an affidavit (which he re-attaches herein) to create the inference that Mr. Fenn received no financial benefit from one of the books.

46.     However, the first problem with this argument was that Mr. Fenn does not address what financial benefit he may have received indirectly (i.e. from website advertisement, product sales, his estate sale of artifacts while the "Chase" was pending) and directly to his family from sales of books written after the Thrill of the Chase.  To date, Mr. Fenn and his counsel have ignored Andersen's inquiry on the subject and, further, have failed to amend their affidavit in either the Erskine case or herein.

47.     In addition, the allegation that the solve to the poem/puzzle is somehow a "trade secret" implies that there is economic benefit to Mr. Fenn after all.   For New Mexico defines a "trade secret" as "information, including a pattern, compilation, formula, program, method, device, process or technique, that:(1) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (2) is the subject of

efforts that are reasonable under the circumstances to maintain its secrecy. NMSA 1978, § 57-3A-2(D)." *Augé v. Stryker Corp.*, 2016 U.S. Dist. LEXIS 60620, *15-16 (D.N.M. 2016)

48. For example, is Mr. Fenn working on a movie or a book currently? If Mr. Fenn is doing so, that would certainly undermine any argument that he is maintaining its secrecy and/or that he is not financially benefitting from the "solve"/find.

49. In any event, given that Mr. Fenn has not offered any affidavit and/or legal argument to support his legal conclusion that the solve to the poem is somehow a "trade secret", the Motion to Quash must be denied as unsupported.

**Mr. Fenn's Bizarre *In Camera* Hearing Request**

50. Mr. Fenn almost seems to be asking that Andersen name him as a defendant herein (notwithstanding he is seeking dismissal of the Erskine case). Here, and again without any citation to any legal authority, Mr. Fenn wants to volunteer his testimony in an *in camera* proceeding to disclose the purported solve. And amazingly, Mr. Fenn wants to exclude Andersen as plaintiff and preclude her from hearing the alleged solve, scrutinizing same and cross-examining him[9]. So basically, a non-party wants to come into this Court and take over Andersen's case? How on earth does he have standing to make that absurd request? *See cases cited supra*. The *Chavez* case involved a dispute (a) relative to a third party confidential informant and (b) the dispute was raised by actual parties to the case; conversely, the *Chavez* case did not involve a third-party subpoena recipient coming into a case and trying to take it over. *Chavez v. City of Albuquerque*, 60 F.Supp.3d at 1201-1202.

---

[9] For example, how would this Court know if Mr. Fenn was lying to the Court without studying the poem/books (as Andersen has done for years)? Mr. Fenn could easily feed this Court a newly fabricated nonsense story about the solve; without hearing possible impeachment/cross-examination from Andersen, this Court may very well accept same without proper scrutiny.

14

51. Moreover, should the "Finder" refuse to answer Andersen's questions relative to his solve before Andersen amends her complaint, Andersen would return to the Court to address same in a motion. Then, after hearing the then-ripe controversy, this Court could rule accordingly. However, such arguments are between the "Finder" and Andersen alone; Third party Fenn would have no standing to interfere. Moreover, these speculative disputes are certainly not ripe as of yet.

**Motion to Strike Exhibits C and D to the Motion to Quash**

52. In addition to the failure to establish a foundation for Exhibits C and D, Andersen objects and moves to strike these exhibits given that they are improperly used to imply crimes were committed. First, Mr. Fenn elected to not provide affidavit testimony. Second, these exhibits are not proper evidence. See, for example *EEOC v. Bo-Cherry, Inc.,* 2013 U.S. Dist. LEXIS 74627, *9-10, (W.D.N.C. 2013)(striking mug shots and related materials from the record as harassing and improper). Third, these exhibits are unnecessary and harassing on these individuals; clearly, counsel for Mr. Fenn would not appreciate having someone post mug shots of him in the Court's record and making such specious arguments relative to him.

**Conclusion**

Wherefore, for the reasons stated herein, Andersen asks this Court to deny Mr. Fenn's Motion to Quash and direct him to respond to the subpoena consistent with the above.

Respectfully submitted:

___/s/ Barbara Andersen_____

Barbara Andersen, 6256000
1220 West Sherwin, Unit 1E
Chicago, IL 60626
(708) 805-1123
bandersen@andersen-law.com

15

## CERTIFICATE OF SERVICE

Barbara Andersen hereby certifies that on September 3, 2020 the **RESPONSE TO MOTION TO QUASH AND OTHER RELIEF [DKT 17] AND COUNTER-MOTIONS TO COMPEL AND TO STRIKE** was filed and delivered via the ECF filing system and e-mail to:

Service list:

karls@sommerkarnes.com

/s/Barbara Andersen_____
Barbara Andersen
Andersen Law LLC
1220 West Sherwin, Unit 1E
Chicago, IL 60626
708-805-1123

September 3, 2020