IN THE UNITED STATES DISTRICT COURT
OF NEW MEXICO

| | |
|---|---|
| Barbara Andersen              ) | |
|     Plaintiff              ) | Case 20-cv- 00553-JFR |
| v.              ) | |
| Forrest Fenn; Unknown Defendant   ) | |

**RESPONSE TO THIS COURT'S RULE TO SHOW CAUSE ORDER [DKT 28]**

    Barbara Andersen, as her own attorney, hereby further responds pursuant to this Court's Order [Dkt. 28]. This response is filed in the alternative to her motion for reconsideration [Dkt. 29]

**Introduction**

    Andersen has tendered a motion for reconsideration or alternatively renewed motion to strike prior to this pleading. See Dkt. 29. Andersen files this alternative response to substantively address the legal discussion contained in this Court's order at Dkt. 28.

    Andersen treats this Court's Order (and Fenn's former counsel's "supplement") as effectively requiring Andersen to brief the sufficiency of her complaint akin to briefing under a Fed.R.Civ.P. 12(b)(6) motion.

**Standard Relative to Fed.R.Civ.P. 12(b)(6) Motions as it Relates to CFAA Claims**

    The standard relative to Fed.R.Civ.P. 12(b)(6) motions is as follows:

> In assessing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court is obligated to accept as true all well-pleaded factual allegations in the Amended Complaint, and view them in the light most favorable to plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683; Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993). Defendant's motion is to be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Still v. DeBuono, 101 F.3d 888, 891 (2d Cir.1996) (citing Conley v. Gibson, 355 U.S. 41, 48, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)).

> Additionally, as portions of defendant's motion appear to attack the sufficiency of plaintiff's amended complaint strictly in regard to Fed. R. Civ. P. 8(a), we will note that "the Federal Rules of Civil Procedure do not require a claimant to set out in

1

detail the facts upon which he bases his claim." Conley, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99. Instead, all the Rules require is a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). This liberal standard governs because the "principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988).

*I.M.S. Inquiry Mgmt. Sys. v. Berkshire Info. Sys.*, 307 F. Supp. 2d 521, 524 (S.D.N.Y. 2004).

Under notice pleading, a claim should not be dismissed relative to challenges over the legal theory plead:

> The Federal Rules of Civil Procedure establishes a "notice" system of pleading in the federal courts. A party is required in the first instance only to plead "a short and plain statement of the claim," Fed.R.Civ.P.8(a)(2), and is not limited to reliance on the legal theory of relief originally pleaded. 2A Moore's Federal Practice P 8.14 (2d ed. 1979). A judgment of dismissal under Rule 12(b) should not be granted "unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." 2A Moore's Federal Practice P 8.13, at 118-19 (2d ed. 1979).

*Zykan v. Warsaw Cmty. Sch. Corp.*, 631 F.2d 1300, 1309 (7th Cir. 1980). Likewise, under notice pleading the Second Circuit has recognized and re-affirmed the liberal nature of review under Fed.R.Civ.P. 8(a) motions:

> This Court has held that "the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980). "[A] complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Id.* (discussing Conley v. Gibson, 355 U.S. 41, 45, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)). The indulgent standard evident in these precedents is codified in Rule 8, which requires no more than "a short and plain statement of [a] claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). …. At the pleading stage, then, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." York v. Ass'n of the Bar, 286 F.3d 122, 125 (2d Cir. 2002) (citation and internal quotation marks omitted; alteration in original).

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co.*, 375 F.3d 168, 176-77 (2d Cir. 2004).

2

**The Relevant Statutory Provisions**

The CFAA allows civil recovery for both "damages" or "loss". The complete section of 18 U.S.C. §1030(g)[1] (which was not cited in its entirety by Forrest Fenn's ["Fenn"] former counsel in Dkt. 25) is as follows:

> (g) **Any person who suffers <u>damage or</u> loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief.** A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses [subclause] (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage. No action may be brought under this subsection for the negligent design or manufacture of computer hardware, computer software, or firmware.

*Id* (emphasis added).

The CFAA expressly prohibits and punishes the hacking of computers pursuant to:

> **(2)** intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains—
>
>     ****
> **(C)** information from any protected computer;

18 U.S.C. § 1030(a)(2)(C ). Likewise, hacking is also prohibited by 18 U.S.C. § 1030(a)(4):

> **(4)** knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period…

---

[1] This statute reference in the legal precedent remains the same. The language is not substantially and/or materially different from the current version. See *See Fiber Sys. Int'l v. Roehrs*, 470 F.3d 1150, 1157 (5th Cir. 2006).

3

The factors to consider as referenced in 18 U.S.C. §1030(g) are contained in 18 U.S.C §1030(c)(4)(a)(I) through V)[2] and are as follows:

> **(I)** loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;
> **(II)** the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;
> **(III)** physical injury to any person;
> **(IV)** a threat to public health or safety;
> **(V)** damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security;

The relevant section for this Court's consideration is subsection I.  In addition, the relevant definitions are applicable:

"Damage" and "loss" are defined as follows for purposes of 18 U.S.C. §1030 are:

> **(8)** the term "damage" means any impairment to the integrity or availability of data, a program, a system, or information;
> **\*\*\***
>
> **(11)** the term "loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service

18 U.S.C. §1030(e)(8), (11).  These definitions were added in 2001[3].  UNITING AND STRENGTHENING AMERICA BY PROVIDING APPROPRIATE TOOLS REQUIRED TO

---

[2]  The predecessor statute to this was 18 U.S.C. §1030(a)(5)(B).  The language is identical. *See Fiber Sys. Int'l*, 470 F.3d at 1157.  The amendment changing the provision from 18 U.S.C. §1030(a)(5)(B) to 18 U.S.C. §1030 (c )(4(a) was in 2008. UNITING AND STRENGTHENING AMERICA BY PROVIDING APPROPRIATE TOOLS REQUIRED TO INTERCEPT AND OBSTRUCT TERRORISM (USA PATRIOT ACT) ACT OF 2001, 107 P.L. 56, 115 Stat. 272, 384, 107 P.L. 56, 2001 Enacted H.R. 3162, 107 Enacted H.R. 3162

[3]  The year of these definitions is important given that the Courts have interpreted same since and clarified the ambiguities.

INTERCEPT AND OBSTRUCT TERRORISM (USA PATRIOT ACT) ACT OF 2001, 107 P.L. 56, 115 Stat. 272, 384, 107 P.L. 56, 2001 Enacted H.R. 3162, 107 Enacted H.R. 3162.  Prior to that, "damage" was defined as follows:

> (8) the term 'damage' means any impairment to the integrity or availability of data, a program, a system, or information, that--
>    (A) causes loss aggregating at least $ 5,000 in value during any 1-year period to one or more individuals;
>    (B) modifies or impairs, or potentially modifies or impairs, the medical examination, diagnosis, treatment, or care of one or more individuals;
>    (C) causes physical injury to any person; or
>    (D) threatens public health or safety;

ECONOMIC ESPIONAGE ACT OF 1996, 1996 Enacted H.R. 3723, 104 Enacted H.R. 3723, 110 Stat. 3488, 3493, 104 P.L. 294, 1996 Enacted H.R. 3723, 104 Enacted H.R. 3723.  In other words, the former definition of "damages" included the relevant modern day language of 18 U.S.C §1030(c)(4)(a)(I) through V).  In that regard, the reference to "loss" was meant to be a description of the definition for "damages"; conversely, in 1996, the modern day definition of "loss" was not yet in effect.

**The Legislative Intent of the CFAA Acknowledges that it is Primarily an Anti-Hacking Statute**

Before delving into the precise language of the CFAA, it is important to note that the CFAA is not simply a statute relative to causing physical harm to a computer or its data.  Rather, as recognized by the Ninth Circuit, the primary intent of the CFAA is an anti-hacking statute:

> The 1984 House Report on the CFAA explicitly analogized the conduct prohibited by section 1030 to forced entry: "It is noteworthy that section 1030 deals with an 'unauthorized access' concept of computer fraud rather than the mere use of a computer. Thus, the conduct prohibited is analogous to that of 'breaking and entering' . . . .'" H.R. Rep. No. 98-894, at 20 (1984); see also id. at 10 (describing the problem of "'hackers' who have been able to access (trespass into) both private and public computer systems"). Senator Jeremiah Denton similarly characterized the CFAA as a statute designed to prevent unlawful intrusion into otherwise inaccessible computers, observing that "[t]he bill makes it clear that unauthorized

5

> access to a Government computer is a trespass offense, as surely as if the offender had entered a restricted Government compound without proper authorization." 132 Cong. Rec. 27639 (1986) (emphasis added). And when considering amendments to the CFAA two years later, the House again linked computer intrusion to breaking and entering. See H.R. Rep. No. 99-612, at 5-6 (1986) (describing "the expanding group of electronic trespassers," who trespass "just as much as if they broke a window and crawled into a home while the occupants were away").
> In recognizing that the CFAA is best understood as an anti-intrusion statute and not as a "misappropriation statute," Nosal I, 676 F.3d at 857-58, we rejected the contract-based interpretation of the CFAA's "without authorization" provision adopted by some of our sister circuits. *Compare Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016), *cert. denied*, 138 S. Ct. 313, 199 L. Ed. 2d 206 (2017) ("[A] violation of the terms of use of a website—without more—cannot establish liability under the CFAA."); *Nosal I*, 676 F.3d at 862 ("We remain unpersuaded by the decisions of our sister circuits that interpret the CFAA broadly to cover violations of corporate computer use restrictions or violations of a duty of loyalty."), *with EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 583-84 (1st Cir. 2001) (holding that violations of a confidentiality agreement or other contractual restraints could give rise to a claim for unauthorized access under the CFAA); *United States v. Rodriguez*, 628 F.3d 1258, 1263 (11th Cir. 2010) (holding that a defendant "exceeds authorized access" when violating policies governing authorized use of databases).
>
> We therefore look to whether the conduct at issue is analogous to "breaking and entering." H.R. Rep. No. 98-894, at 20. ….
>
> ****
>
> When section 1030(a)(2)(C) was added in 1996 to extend the prohibition on unauthorized access to any "protected computer," the Senate Judiciary Committee explained that the amendment was designed to "to increase protection for the privacy and confidentiality of computer information." S. Rep. No. 104-357, at 7 (emphasis added).

*HiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 1000-01 (9th Cir. 2019)(affirming granting of injunctive relief in civil action pursuant to 18 U.S.C. § 1030(a)(2)(C)).  The Court have consistently held that hacking into personal computers under § 1030(a)(2)(C) gives the right to both criminal and civil relief. *HiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 1003 (9th Cir. 2019)( "The statutory prohibition on unauthorized access applies both to civil actions and to

criminal prosecutions….' *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009).");

*Fiber Sys. Int'l*, 470 F.3d at 1157 (allowing civil relief under 18 U.S.C. § 1030(4)).

**CFAA's Civil Liability is Not Limited to Only the Conduct Listed in 18 U.S.C §1030(c)(4)(a)(I) through (V)**

Moreover, it is clear from the historical precedent of 18 U.S.C. §1030(g) that civil relief is not limited to the conduct contained in 18 U.S.C §1030(c)(4)(a)(I) through (V):

> Based on its reading of § 1030(g), the district court held that the section does not create a civil action for violations of § 1030(a)(4). Similarly, defendants argue that the explicit terms of § 1030(g) only authorize civil actions for violations of § 1030(a)(5).
>
> However, this interpretation is at odds with the language of the statute, which plainly allows such an action to proceed. Section 1030(g) extends the ability to bring a civil action to any person suffering damage or loss under "this section," which refers to § 1030 as a whole, as subsection (g) does not proscribe any conduct itself. And although § 1030(g) refers to subsection (a)(5)(B), the statute does not limit civil suits to violations of § 1030(a)(5). Indeed, if Congress intended to limit civil actions in this manner, it could have simply provided that civil actions may only be brought for violations of subsection (a)(5).
>
> Instead, the statute provides that a claim brought under any of the subsections of § 1030 must involve one of the factors listed in the numbered clauses of subsection (a)(5)(B). These factors are:
> (i) loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or [**11]  other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $ 5,000 in value;
> (ii) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;
> (iii) physical injury to any person;
> (iv) a threat to public health or safety; or
> (v) damage affecting a computer system used by or for a government entity in furtherance of the administration of justice, national defense, or national security .
> . . .
> 18 U.S.C. § 1030(a)(5)(B). Accordingly, a civil action may be maintained under § 1030(a)(4) of the CFAA if the violative conduct involves any one of these factors. Our interpretation is consistent with that of other circuits that have addressed this question. *See P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 512 (3d Cir. 2005) ("We do not read section 1030(g)'s language that the claim must involve one or more of the numbered subsections of subsection (a)(5)(B) as limiting relief to claims that are entirely based only on subsection

7

(a)(5), but, rather, as requiring that claims brought under other sections must meet, in addition, one of the five numbered (a)(5)(B) 'tests.'"); *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 n.5 (9th Cir. 2004) ("[S]ubsection (g) applies to any violation of 'this section' and, while the offense must involve one of the five factors in (a)(5)(B), it need not be one of the three offenses in (a)(5)(A).").

*Fiber Sys. Int'l*, 470 F.3d at 1157 (finding that the CFAA gave civil remedy, including monetary and injunctive relief, despite the fact that it was not within the (now) §1030(c)(4)(a)(I) through V factors for theft of proprietary/trade mark information from its databases).

Likewise, the Third District confirmed that hacking of proprietary information where the amount exceeds $5,000 is actionable despite not being one of the (now) factors:

> The only remaining issue pertains to an aspect of section 1030(g) that was also of concern to the District Court. That is, does the reference in section 1030(g) to subsection (a)(5)(B) preclude relief for violations that are brought - as PC plaintiffs' is - under subsection (a)(4)? We conclude that it does not, provided that the claim brought under subsection (a)(4) - or any other section for that matter - "involves" one of the five enumerated results in § 1030(a)(5)(B)(i)-(v). For ease of reference, we repeat both section 1030 (a)(4) and (a)(5) in the footnote below.
>
> Here, PC plaintiffs' claim is clearly based on a violation of (a)(4), but they included in their complaint a specific allegation of loss in excess of $ 5,000, which satisfies (a)(5)(B)(i). We do not read section 1030(g)'s language that the claim must involve one or more of the numbered subsections of subsection (a)(5)(B) as limiting relief to claims that are entirely based only on subsection (a)(5), but, rather, as requiring that claims brought under other sections must meet, in addition, one of the five numbered (a)(5)(B) "tests." See I.M.S., 307 F. Supp. 2d at 526. Otherwise, the language would not have referred to one or more of the numbered subsections, but would have said that relief is only available for claims under subsection (a)(5). We must take Congress' use of language as purposeful. See Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992) (noting that "courts must presume that a legislature says in a statute what it means and means in a statute what it says"). Accordingly, we conclude that the claim asserted by PC plaintiffs fits squarely within the class of claims eligible for injunctive relief, for it involves one of the factors contained in subsection (a)(5)(B), namely, the $ 5,000 loss provision of (a)(5)(B)(i).
>
> We note that one court seems to have read section 1030(g)'s reference to subsection (a)(5)(B) as limiting relief under section 1030(g) to only subsection (a)(5) claims, but we disagree. See McLean v. Mortg. One & Fin. Corp., 2004 U.S. Dist. LEXIS 7279, *5 (D. Minn. Apr. 9, 2004). The weight of authority is clearly to the contrary. See Theofel, 359 F.3d at 1078 ("The conduct must involve one of five

>factors listed in 18 U.S.C. § 1030(a)(5)(B), which include a loss in excess of $ 5000."); Nexans Wires S.A. v. Sark-USA, Inc., 319 F. Supp. 2d 468, 472 (S.D.N.Y 2004) (holding that requirement is met where plaintiff meets the jurisdictional threshold by asserting loss in excess of $ 5,000 under (a)(5)(B)(i)); I.M.S., 307 F. Supp. 2d at 526 (holding that subsection (g) affords a civil action for any CFAA violation, but "requires an allegation of one of the five enumerated factors in § 1030(a)(5)(B)).

*P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 511-13 (3d Cir. 2005); see also *I.M.S. Inquiry Mgmt. Sys.*, 307 F. Supp. 2d at 524 (finding that claim under 18 U.S.C. § 1030(a)(2)(C) was permissible to bring civil action). In other words, any offense under the CFAA is actionable so long as the jurisdictional limit exceeds $5,000. *Id*. The offenses subject to this jurisdictional limit (i.e. the term "loss" in this paragraph) are not constructed only to those activities delineated in 18 U.S.C §1030(c)(4)(a)(I) through (V).

**Andersen's Claim For the Theft of Proprietary Information from Her Computer/E-mails for Purposes of the CFAA**

In Fenn's former counsel's "supplement", the focus is on the word "loss". However, counsel omits that Andersen is entitled to pursue a claim under Section (g) of the CFAA for "damages" or "loss". The use of the word "or" in 18 U.S.C. §1030(g) is to be construed as having a disjunctive meaning. *United States v. Vickery*, 199 F. Supp. 2d 1363, 1366 (N.D. Ga. 2002) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings unless the context dictates otherwise." (internal citations omitted). Thus, Andersen is not only required to plead "loss" under the CFAA; rather, Andersen may plead either "damage" or "loss" under the CFAA. CFAA defines "damage" as **"**any impairment to the integrity or availability of data, a program, a system, or information".

Here, Andersen has clearly alleged that a hacker/unknown third party has accessed her personal, proprietary information from her computer/e-mails relative to the solve surrounding the Fenn treasure. Andersen has clearly alleged that this fact well exceeds the $5,000 jurisdictional

9

limit.  The hacking clearly violated 18 U.S.C. §1030(g) in that it is clearly an offense under 18 U.S.C. § 1030(a)(2)(C) and/or 18 U.S.C. § 1030(a)(4).  The cases cited *supra* do not require (a) that Andersen plead further detail under F.R.Civ.P. 8(a); (b) that Andersen plead that the offense (as opposed to the jurisdictional limit) comes within 18 U.S.C §1030(c)(4)(a)(I) through (V).  Moreover, the legal precedent has long rejected that Andersen's "loss" for purposes of 18 U.S.C §1030(c)(4)(a)(I) through (V) must relate to addressing physical damage to her computer (as opposed to loss of her proprietary information).  *See cases cited supra*.  As such, Andersen asks that this Court proceed with the Amended Complaint and discovery and strike the objections of former counsel for Fenn.

In sum, it is clear from the above precedent and, further, the disjunctive use of "damage or loss" (as opposed to "damage and loss") that Andersen may proceed under the CFAA against the Unknown Defendant under the CFAA for damages (only) relative to the hacking of her computer/e-mails and the theft of proprietary/solve information.  It is also clear that the modern definition of "loss" is not intended to constrict the breadth of claims that can be brought given: (a) there is no legislative history known to Andersen to support such an interpretation; (b) Fenn's former counsel has not offered any legislative history to suggest that the addition of the word "loss" was intended to constrict the scope of claims under the CFAA despite the fact that it is his burden to establish same under Fed.R.Civ.P. 45; (c) the Circuit courts continue to apply the broad interpretation of 1030(g) claims not withstanding the additional definition of the word "loss"; (d) the fact that the old "damages" incorporates the word "loss" and that this provision is effectively cut and pasted into modern day 18 U.S.C §1030(c)(4) suggests that there are simply drafting ambiguities/errors in the statute (as opposed to an expressed intention to restrict the scope of the

CFAA); and (e) the Circuit courts continue to apply the broad interpretation of 1030(g) claims notwithstanding other ambiguities/errors in drafting.

**Alternative Motion to Amend and Renewed Request for Discovery**

Moreover, as noted at the inception of this brief, the standard relative to Fed.R.Civ.P. 8(a) is liberal and does not require dismissal under notice pleading so long as the facts (as opposed to the legal theories plead) state a claim (rather than a cause of action).  Thus, even if this Court were to reject the CFAA arguments addressed above, that does not mean that dismissal with prejudice is appropriate.  Indeed, former counsel for Fenn does not argue as such.  Rather, at best, Andersen would be required to plead a state-based tort claim for unjust enrichment in the alternative to her CFAA claims. *GM L.L.C. v. Autel.US Inc.*, 2016 U.S. Dist. LEXIS 40902, at *31 (E.D. Mich. Mar. 29, 2016)(finding hacking allegations and misappropriation of proprietary information stated claim for theft of trade secrets and unjust enrichment); *Sprint Sols., Inc. v. Tijerina Grp., LLC*, 2016 U.S. Dist. LEXIS 190343, at *6 (S.D. Tex. Aug. 30, 2016).  Thus, in the event that this Court disagrees with Andersen relative to her legal theory and arguments relative to the CFAA, Andersen asks this Court to allow Andersen to amend with state-based claims.

But, again, the question will still remain is: who is the Finder and what is their contact information for purposes of considering whether Andersen should pursue the alternative state-based claims here (under diversity of citizenship) or in a state court?  Without knowing the contact information of the "Finder", Andersen can obviously not plead diversity of citizenship.

So, again, Andersen asks this Court to enforce its order relative to compelling Fenn's former counsel to disclose the contact information of the "Finder" to Andersen so that she can (a) request leave to amend the complaint formally before this Court and (b) seek other appropriate

relief (i.e. transfer to state court if warranted).  Without the contact information of the purported "Finder", Andersen is again in limbo even if this Court strikes Andersen's federal CFAA claim but allows her to amend under a state based unjust enrichment claim.

**The Potential Claim Against the Estate of Fenn Continues to Grow if Not Confirmed That There is a Real "Finder" With a Verifiable Solve Or, Alternatively, That the Chest Does Not Still Remain Hidden**

As this Court may recall, Fenn and Fenn's former counsel requested an in camera hearing with the purported "Finder" in an *in camera* hearing before this Court.  Andersen has objected to same.  See Dkt.s 17 and 18.

Since Dkt. 17, the purported "Finder" has come forward to announce their "discovery" of the chest on the website call "Medium".  This press release was posted again on the website of Fenn's family and on a website by third party/blog website DalNeitzel https://dalneitzel.com/2020/09/23/finder-story/. [4]

In reviewing the press release: (a) it is readily suspect as drafted by a professional writer (i.e. partially by Fenn pre-death and/or one of his author friends such as Doug Preston); (b) it (yet again) echoes facts relative to Andersen's solve/experiences; and (c) the article reads more like an obituary drafted by the Fenn "team" rather than a third party solver/finder who would not know Fenn on an in-depth level.  So, if the Fenn stands by its position that there is a "shy" (as opposed to a "Chi"[cago] finder) "Finder" in current possession of the chest (as opposed to the estate of Fenn), it is now undermined by the "Finder's Story".  In other words, the "Finder's" story suggests that the conclusion of the Chase is a hoax; that there is no real "Finder"; that the representations

---

[4] Given that the story does not reflect that it was reprinted with permission of the Finder, it is suggestive that Dal Neitzel also knows the identity of the "Finder" and that the purported desire for the Finder to remain anonymous/unknown as claimed by Fenn is not true.  Moreover, based on this and other facts that Andersen has observed over the years, Andersen suspects that Dal Neitzel is part of Fenn's team relative to the treasure hunt.

to this Court made in Dkt. 17 to Andersen and this Court are false; that the treasure may be hidden or in the possession of the Fenn estate; and that Andersen is being teased/pranked by the Fenn "team".

Here, Andersen will point out to this Court that there is an obvious taunting/teasing of Andersen in the "Finder" article. The article reads: "Knowing the exact spot on the globe where a person would like to die is a weird intimacy to share with a stranger, but the experience of figuring it out and proving **beyond a reasonable doubt**…."   This is an obvious reference to Andersen's false arrest case. Fenn has been teasing Andersen with her arrest and false arrest case for years. See https://dalneitzel.com/2018/12/05/scrapbook-one-hundred-ninetyfive/ ("She joked that the "Movement" **may have her arrested**."). Likewise, the Finder addressing how "he" "bawled"[5] on finding the treasure is consistent with Fenn teasing Andersen as the "babbling" criminal). https://dalneitzel.com/2018/10/05/scrapbook-one-hundred-ninetythree/ (the distraught Rooster Cogburn coming down I80[6] and forgetting her orange [jumpsuit] and "babbling like a criminal").

Likewise, the fact that this article was drafted on the "Medium" website (like the "Amtrak" article referenced in the Amended Complaint), Andersen joked to Fenn that she used her "psychic" powers back in the Spring of 2018 to find a key spot to the solve location. There were many jokes/videos sent by Andersen to Fenn on this point. Andersen will share same with this Court if desired *in camera*.

Moreover, without giving too much away in the public record (although, again, Andersen is happy to address same in an *in camera* hearing), there are many other words/facts from this

---

[5] Of course, that the Finder admits that he "bawled" undermines the assertion that the Finder is male. There is another fact that undermines this; however, Andersen would prefer to address same *in camera*.

[6] The main interstate is I80 from Chicago to New Mexico.

article consistent with Andersen's solve including: the word "iridescent", the scissors, the necklace on the table (which is not shown in the treasure find pictures), the "student loans", the bad poem, going alone in there, the dragon in the picture, "melancholy", the fake blaze, "rakish", "genius", the need to take a day's supply of water, and the effort to move to Santa Fe.

As such and again, Andersen requests this Court to conduct a status hearing and address: (a) Dkt 17 with counsel and whether same should be withdrawn; (b) whether the conclusion to the Chase was a hoax; (c) where the chest is currently; (d) whether the "Finder" is the solver; (e) details about the solve; (e) the contact information of the purported "Finder"; (f) whether the "Finder" article is simply a work of fiction drafted by the Fenn "team"; and (g) whether the text messages that Andersen received were simply pranking by a member of Fenn's team as opposed to a hacker.

**Conclusion**

Wherefore, for the reasons stated herein, Andersen requests: (a) not strike Andersen's Amended Complaint; (b) allow discovery as to the contact information of the "Finder" to proceed; (c) allow additional discovery as to the location of the treasure chest; (d) allow Andersen to issue an additional subpoena to the "Medium" website to find out who published this article; (e) that this Court order a status requiring Mr. Sommer to address his pleadings and Andersen's above questions; and (f) that this Court order an *in camera* hearing with Andersen to further address the solve, books, etc.

                                                 /s/ Barbara Andersen

Barbara Andersen, 6256000
1220 West Sherwin, Unit 1E
Chicago, IL 60626
(708) 805-1123
bandersen@andersen-law.com

**CERTIFICATE OF SERVICE**

Barbara Andersen hereby certifies that on October 8, 2020 the **RESPONSE TO THIS COURT'S RULE TO SHOW CAUSE ORDER [DKT 28]** was filed and delivered via the ECF filing system to:

Service list:
karls@sommerkarnes.com


/s/Barbara Andersen_____
Barbara Andersen
Andersen Law LLC
1220 West Sherwin, Unit 1E
Chicago, IL 60626
708-805-1123