IN THE UNITED STATES DISTRICT COURT
OF NEW MEXICO

Barbara Andersen )
      Plaintiff )    Case 20-cv- 00553-JFR
v. )
Jack Stuef )
      Defendant )

## SECOND VERIFIED AMENDED COMPLAINT

    Barbara Andersen, as her own attorney, files this second amended verified complaint against Jack Stuef.  In support of her second amended complaint, Andersen states as follows.

**Background as to Andersen as Plaintiff**

    1.    Andersen is currently a resident of Chicago, Cook County, Illinois.  Andersen is a licensed attorney in good standing since 1998.   Andersen is in the process of winding down her Illinois law practice in Chicago and moving to Santa Fe.  Andersen has been attempting to sell her home and complete her legal work in Chicago.  Andersen's move has been delayed largely due to Covid's effect on both.  Andersen is hoping to complete her move and return to Santa Fe by the Spring of 2021.

    2.    Andersen was a former partner at a large national law firm in Chicago until the recession.  Andersen has since practiced at a smaller firm and, later, under her own law firm.

    3.    Andersen's law practice was/is mostly focused on real estate litigation in Illinois state court; Andersen's specialized area was title insurance, lien priority disputes and fraud litigation.  Andersen has had a few cases in federal court; however, state court is mainly where she has practiced in her career.  Andersen began her career as a real estate transactional attorney; necessity of her law firm at the time pushed Andersen from transactional work into real estate litigation.

1

4.      In her years of fraud investigation and litigation, Andersen has unwound many fraud scheme… akin to Fenn's Hitchcock reference to the classic movie "To Catch a Thief" in his books.

5.      In her communications with Fenn, Andersen advised him that she enjoyed a "Shadow of a Doubt", a rare mystery thriller with a female protagonist.   Interestingly, "Young Charlie" catches "Uncle Charlie" as the "Merry Widow Murderer" by a tune that she cannot shake and, further, his emerald ring. https://www.youtube.com/watch?v=NX8Zz2HIu5A   and https://www.youtube.com/watch?v=7gE-TQE4wHE.[1] Here, as young Forrest sings from his stool washing dishes, he is actually calling his readers… like the pied piper… to find his secret location. This was one of the songs posted on Mysterious Writings years ago: https://www.youtube.com/watch?v=IS6n2Hx9Ykk     Interestingly, Jack Stuef claims in his unverified press releases that the emerald ring is missing from the "found" treasure chest.  See also sealed Dkt 41 (reference to emerald ring).

6.      Here following the singing Fenn (along with many other clues in the books and scrapbooks etc), as Andersen did, the reader will find his secret spot location in New Mexico. Upon information and belief, the solve location does not lead one to Wyoming.  Likewise, upon information and belief, the nine clues are all located in New Mexico and, conversely, not in Wyoming.

**Background: Andersen is far from a "Greedy" Person or Attorney**

7.      In lieu of responding to the subpoena privately and in a verified fashion, a Fenn family member created a media circus to fallaciously assert that (a) former Onion/spoof write Jack

---

[1]      Andersen also offered other waltz suggestions relative to the nine clues in her correspondence to Fenn.

Stuef was the "Finder"/solver of the poem and (b) that Andersen was nothing more than a "greedy" person.

8.      First, this is not true.  Andersen's only reason for bringing this litigation is that, upon information and belief, she is the true and sole solver of the Fenn puzzle/poem.

9.      Second, as background and on personal level, there was no basis to make such a statement.  For example, Andersen waived child support and alimony in her 2010 divorce to her financial detriment.

10.     Third, in her 20 years of practice as a lawyer, Andersen has given many services free of charge to the Chicago legal community.  For example:

    a.  Andersen has twice written for the Illinois Bar Journal.  See
        https://www.isba.org/ibj/authors/gimbelbarbaraandersen          and
        https://www.isba.org/ibj/2006/09/lenderleapfrogconventionalsubrogati   and
        other law publications (i.e. IICLE);

    b.  Andersen has received extensive "pro bono" recognition for her years of
        providing free legal services to indigent members of the Chicago community
        and     was     a     member     of     "Phi     Alpha     Delta"
        https://cdn.ymaws.com/www.pad.org/resource/collection/F3851937-4AEB-
        4513-A429-D5084062E1C5/2009JuneWEB.pdf .   Andersen continued on her
        pro bono services at her own law firm thereinafter.   https://www.cvls.org/wp-
        content/uploads/2019/10/news15mar.pdf ;

    c.  Andersen quit her high paying law firm in 2010 when her law firm partners
        acted terribly to her clients by arranging for their clandestine termination
        without her knowledge; and

    d.   Andersen took on a case against publicly traded Zillow for free given that she considered their Zestimate practice to be unethical, fraudulent and against consumer protection principles/laws.  While Andersen lost the battle, the legal war against Zillow continues on. https://www.kubiklawfirm.com/2019/08/02/revived-putative-class-action-against-zillow-brings-the-legality-of-its-co-marketing-program-center-stage-again/ .  (Andersen was recently told that a Florida suit may also be forthcoming.)

11.    Upon information and belief, the Fenn family attempted to cast Andersen as "greedy" etc. as a diversion tactic.

12.    Upon information and belief, the unverified "Find" announcement is a "hoax" ending  consistent with (a) the Chase itself; (b) recent songs by Fenn's friend, Taylor Swift (i.e. the "Hoax", "Willow", "Evermore", "The Lakes", "Invisible String", etc.; and (c) Fenn's multiple references to being a "joker" and/prankster.   See  https://mysteriouswritings.com/featured-question-with-forrest-ashton-kutcher/

**Background: Andersen as the Former English Literature Major**

13.    In his unverified press release, Jack Stuef states that "Chase" was intended for an English major. (""I don't want to ruin this treasure hunt by saying it was made for **an English major**, but it's based on a close read of a **text**,")  https://www.outsideonline.com/2419429/forrest-fenn-treasure-jack-stuef.

14.    Upon information and belief, Jack Stuef was not an English major but an Economics major in college.  https://thehoya.com/heckler-reopens-doors-to-dialogue/  and https://econ.georgetown.edu/major/  Moreover, upon information and belief, Jack Stuef is a

spoof/Onion writer assisting the Fenn Family relative to New Mexico (not Wyoming) tourism.

See                              https://www.youtube.com/channel/UCc3j0IrLQ6WS6o986A5PqWg

https://www.wonkette.com/new-wonkette-writer-jack-stuef-and-senator-elect-to-be-alvin-

greene-hopey-change-you-can-believe-in ; https://www.thedailybeast.com/trig-palin-wonkette-

post-how-it-started-a-flame-war; https://www.theawl.com/2012/02/i-am-the-worlds-worst-

sperm-donor/ ; https://www.wonkette.com/new-wonkette-writer-jack-stuef-and-senator-elect-to-

be-alvin-greene-hopey-change-you-can-believe-in

15.     Conversely, it was Andersen who was the English literature major in college.

Pursuant to that skill (along with her training in fraud litigation), Andersen is the true solver of the

Forrest Fenn puzzle/poem.  Upon information and belief, Stuef is (a) a participant in a prank ending

to the "Chase" and is (b) teasing and taunting Andersen in the process by his subtle references to

her background and her solve.

**Background: Facts Relative to Forrest Fenn as Non-Party at this Juncture**

16.     Forrest Fenn was a resident of Santa Fe, New Mexico.  Counsel for Fenn has

advised this Court that Fenn is deceased in this Court's record. [Dkt. 21][2]  While Andersen does

not seek relief against the decedent's estate and/or heirs of Fenn in this amended complaint given

that the Estate and Fenn family appear to be slowly admitting their prank ending of the "Chase",

Andersen reserves the right to seek such relief at a potential future date.

**Background: The Solve Location is Clearly in New Mexico… Not Wyoming**

17.     Upon information and belief, the solve to this poem is in New Mexico.   There are

many ties to this area including, but not limited to: the ladders on the chest; crocodile rock (a

---

[2]     Andersen accepts the representations of Fenn's former counsel as true under F.R.Civ.P. 11.
Andersen attempted to independently verify same through the Santa Fe County records; however,
this information was not available to the public except family.

reference    from    the    book    to    Elton    John    and    many    crocodile    references
https://www.youtube.com/watch?v=xw0EozkBWuI ); Tesuque; the reference to Abiquiu/Georgia
O'Keefe;    and    the    mistake    from    the    2010    Today    interview
https://www.youtube.com/watch?v=Ffn_IPVH-Ic&t=38s . There are also more blatant examples
that Andersen will offer to show this Court *in camera* as to why there is no serious question that
the solve location is anywhere except in New Mexico.

18.     Moreover, upon information and belief, Andersen solved: (a) the key word to the
poem; (b) all or most of the nine clues; (c) found the fake blaze (not Stuef); (d) found the final area
(not Stuef); (e) found same in a two year period (not Stuef); (e) announced the "blaze" at the final
location in June 2020 (not Stuef); and (f) was the "force or nature" that moved same, i.e. jokingly
called "Pepe", in June 2020.     Joking videos relative to "Pepe" include the following:
https://www.youtube.com/watch?v=upEn5msShdk                                                    and
https://www.youtube.com/watch?v=SyzltW-BRYA

19.     Moreover, it was Andersen (not Stuef) who caught Fenn's purposeful "mistakes"
relative to the precise area of where to search in New Mexico and, further, the final search area.
Upon information and belief, Fenn's "mistakes" have nothing to do with the State of Wyoming
and/or the city of Cody.   Again, the final solve area is where Andersen was searching in June
2020… in New Mexico.   Andersen will offer clear evidence of same *in camera*.

20.     There is also no question that the "Found" treasure chest contains subtle references
to Andersen despite being claimed as "owned" by Stuef.   These facts include:

    a.   The    reference    to    Mount    Rushmore
       https://www.youtube.com/watch?v=BB2y72eRwIU&t=200s ;
    b.   The Willowtree (Andersen's blog name) branch;
    c.   The blurred picture of Andersen and her dog, Cupcake in the "found" chest;
    d.   The scissors in the chest relating to the "third clove" hint which is in Andersen's
       search area;

      e.   The alleged spider web in the chest; and

      f.   The reference to a canopy (aka tipi) that Andersen's sister painted relative to the solve and Andersen's jokes relative to same.

21.    Conversely, there is no serious connection to the solve location, key word and/or nine clues being in Wyoming as asserted by Stuef in his unverified press releases.   This is particularly true given that there is no serious solve location in the southwest corner of the State where pinyon trees grow.   See https://www.santafenewmexican.com/life/features/state-tourism-ad-aims-to-draw-treasure-hunters-but-fenn-denies-videos-clues/article_5abf4aa5-c34a-5ad3-9dfe-bbd4ac3bb524.html  and https://plantsandrocks.blogspot.com/2015/04/dreaming-of-pinyon-pines.html

22.    Likewise, there is no credibility to the claim that a willowtree branch fell into the chest in Wyoming, generally, or in particular as to the southwest corner of the State as claimed by Stuef in his unverified press releases.  Rather, upon information and belief, the willowtree was purposefully placed in the treasure chest to subtly taunt and tease Andersen as the true solver of the Fenn puzzle/poem.

23.    Upon information and belief, the fallacious Wyoming announcement: (a) stems from communications between Fenn and Andersen that people would not believe the solve if posted (which it was) on the internet   (this was the song Fenn teased Andersen with: https://www.youtube.com/watch?v=MRDm2tNyX50 ); (b) is a mockery of the YouTubers who regularly attempted to monetize off of the "Chase" when, the reality of doing so, was contradictory to same; (c) is a mockery of the YouTubers who misled and wasted the time of the public into groupthink and false leads to Wyoming; and (d) is a jab at the national media and their superficial coverage of "news".

24.     In sum, upon information and belief, the Wyoming solve announcement is nothing more than a prank/hoax announcement fabricated by the Fenn estate, Fenn family and spoof/New Mexico tourism writer, Jack Stuef.

**Background: Jack Stuef is Not the Solver of the Fenn Puzzle/Poem**

25.     After Andersen issued the subpoena herein to the Estate of Fenn, Jack Stuef and his purported attorney have publicly announced various unverified "facts" relative to Jack Stuef which lack credibility.

26.     Jack Stuef asserts unverified "facts" relative to his purported "finding" of the treasure chest, himself and his solving of the puzzle.  Two sample press releases are as follows:

      a.  Medium      article      (pre-subpoena):      https://thefinder.medium.com/a-remembrance-of-forrest-fenn-1be2a8646ff2; and

      b.  Outside        Magazine        article        (post        subpoena): https://www.outsideonline.com/2419429/forrest-fenn-treasure-jack-stuef and

      c.  Mysterious        Writing        (post        subpoena)        article: https://mysteriouswritings.com/six-questions-with-jack-stuef-the-finder-of-forrest-fenns-treasure-chest/[3]

27.     Upon information and belief, Andersen alleges in contradiction of the unverified press releases by Jack Stuef as follows:

      a.  Stuef is not a current resident of Michigan;
      b.  Stuef is a resident of Pennsylvania;
      c.  Stuef is not the true "Finder" of the treasure chest;
      d.  Stuef did not solve the Forrest Fenn puzzle/poem;
      e.  Stuef has no photos of his searches from Wyoming;
      f.  The "Find" photos are photo-shopped and inaccurate;
      g.  Stuef has no substantial evidence of finding the treasure chest in Wyoming;
      h.  Stuef has no evidence of e-mail correspondence and/or blog communications with Forrest Fenn relative to searching for the treasure;
      i.  Stuef was not a real searcher of the chest;

---

[3]     Andersen also has another article from the now deleted Dal Neitzel website.

j.  The solve of the Fenn poem is in New Mexico;

k.  All nine clues are located in New Mexico;

l.  The key word is connected to an area in New Mexico;

m.  The scissors in the chest relate to one of the clues in New Mexico;

n.  Stuef was an economics major, did not take pre-med classes, did not attend medical school, and does not have medical school debt;

o.  Stuef is a spoof writer with past experiences in the Onion;

p.  Stuef's announcement relative to the "Chase" is nothing more than a spoof piece as part of a prank ending;

q.  Stuef is teasing and taunting Andersen in his "Find" announcements and his subtle references to Andersen;

r.  Stuef did not personally write the "Find" articles or, alternatively, did so in conjunction with the Fenn family;

s.  Stuef has been assisting Fenn relative to public relations for New Mexico tourism;

t.  Stuef is aware that Andersen is the true solver of the Fenn puzzle/poem;

u.  Stuef's Santa Fe attorney is retained by the Fenn family and/or the Estate of Fenn;

v.  Stuef's Santa Fe attorney is retained by the Fenn family to address environmental issues in Andersen's search area in New Mexico;

w.  Stuef is not paying any attorney and/or vault fees relative to the treasure chest;

x.  The reference to Stuef being called "Bill" (in a Dal Neitzel article) around the Fenn house is a reference to Bill Gorman;

y.  Bill Gorman was paid by the Fenn family relative to the "Chase";

z.  Dal Neitzel worked with Stuef and/or the Fenn family as part of the prank ending of the "Chase";

aa.  Jenny Kile worked with Stuef and/or the Fenn family as part of the prank ending of the "Chase"; and

bb.  Stuef either hacked Andersen or, alternatively, is acting with the Fenn family as part of a prank ending relative to the "Chase" and against Andersen.

**Jurisdiction and Venue**

28.  Andersen seeks relief for monetary and injunctive relief against Jack Stuef pursuant to 18 U.S.C. § 1030(g) or, alternatively, pursuant to a tort claim of unjust enrichment.

29.  This Court has subject matter jurisdiction under 28 U.S.C. § 1331 given that one count herein involves a federal question.  This Court alternatively has subject matter jurisdiction under 28 U.S.C. § 1332 in that Andersen is a resident of Illinois (and eventually New Mexico); conversely, upon information and belief, Stuef is either a resident of Michigan (as claimed in his press releases) or Pennsylvania (as Andersen's research to date suggests).

30.     This Court also has personal jurisdiction to hear this matter.  First, Jack Stuef has purposefully directed his activities in this forum.  Here, Jack Stuef and his attorney claim that he is the finder/solver/retriever/possessor of the treasure.  Here, Jack Stuef contends that the treasure chest (except for the above-referenced emerald ring) is sitting in a storage vault in Santa Fe. Second, Andersen claims that the above, unverified representations are false and, further, that the solve location is in New Mexico.  Andersen contends that Stuef wrongfully claims ownership of the chest via hacking Andersen relative to her New Mexico location or, alternatively, wrongfully usurping ownership of the treasure chest under an unjust enrichment claim.

31.     In addition, this Court has personal jurisdiction given that the claim arises out of defendant's forum-related activities, specifically hacking or usurping Andersen's ownership rights in the treasure chest and solve.  Moreover, Andersen contends that this Court possesses personal jurisdiction given that Fenn created this puzzle/poem in New Mexico and, further, that Fenn's counsel have contended that New Mexico is the proper forum in *Erskine v. Fenn* , 3:20-cv-08123, pending in Arizona.  As such, venue and personal jurisdiction are proper in the District of New Mexico because a substantial part of the events giving rise to Andersen's claims occurred within the District of New Mexico pursuant to 28 U.S.C. § 1391(b)(2).

### COUNT I- HACKING
### PURSUANT TO 18 U.S.C. § 1030(g)

**Background: Andersen's Searching and her Relationship with Fenn**

32.     Andersen participated in a treasure hunt drafted by Fenn.  To the best of Andersen's recollection, Andersen first heard about the poem/puzzle in 2017 while she was dealing with the stress of litigation with her ex-husband, a wealthy Illinois physician, and the above-referenced Zillow case.  Specifically, Andersen had just gotten done dealing in defending a frivolous criminal matter that was instigated by her ex-husband and his divorce attorney as a custody ploy; while

Andersen ultimately got the charges thrown out at trial without the need to put on a defense (because Andersen's ex-husband was a fake victim), Andersen had been subjected to years of litigation and costs both relative to the criminal matter and the custody matter.   The custody litigation is still ongoing to date.  It has been very tiring and harassing against Andersen.

33.     In 2017, Andersen was just beginning efforts to go after her ex-husband and the police (Village of Glenview, Illinois) for the filing the false charges and harassing her with the criminal litigation as well as their conduct within the criminal litigation itself.  It was in 2017 that Andersen filed her false arrest litigation in Illinois state court that was thereinafter removed to the Northern District of Illinois.   One of the claims that Andersen sought to pursue was a *Monell* claim relative to the systemic, problematic conduct of the Glenview Police Department.

34.     When Andersen first learned of the search, Andersen did not buy the book at first.  Rather, Andersen read the blogs ( http://mysteriouswritings.com/ and https://dalneitzel.com/) without buying the books.  Andersen surmised that Fenn hid himself in the blogs posting additional hints; Andersen believes that she was correct in her belief.     These blogs have been cleansed/deleted either prior to or during this litigation.  Andersen has been able to capture some of the materials from the DalNeitzel site prior to December 2020 deletion.

35.     After reading the blogs, Andersen wrote a quick e-mail to Fenn in 2017.  For the most part, except from recent months, Andersen did not retain her e-mails to Fenn.  For Andersen, the hunt was never something that she intended to bring to litigation.  Rather, this event was supposed to be her break from it and hopefully an escape from the tiring legal profession.

36.     To the best of her recollection, Andersen's first e-mail was just a quick note thanking Fenn for the fun idea and, further, that Andersen was using same as an outlet from her

legal work and a stressful situation.  To the best of her recollection, Andersen did not mention the specifics of what she was dealing with in her e-mail communications with Fenn.

37.     In response to her e-mail, Fenn wrote back within a very short time period and teased Andersen.  It was a very nice, funny introduction that was going to lead to years of teasing/pranking between Andersen and Fenn.   Over the years, Andersen and Fenn teased each other in this fantasy solve with various characters including a crocodile/elephant (amongst many others).  Andersen would e-mail Fenn; Fenn would respond in "Scrapbooks".

38.     Fenn always made sure to never give private hints to Andersen.  In fact, Fenn went out of his way to offer many hints to the general community after Andersen found a key location in 2018

39.     Upon information and belief, it was around January or February of 2018 when Andersen had a breakthrough on reading the blogs.  Suspecting that Fenn was playing a character on the DalNeitzel blog, Andersen wrote Fenn asking for that person's contact information to tease Fenn.  Fenn did not respond to Andersen's e-mail.  However, while Andersen did not realize it at the time, Fenn indirectly responded to Andersen by posting on the Mysterious Writing website that he had a "gut feeling" that the treasure chest would be found that year (2018).  In part, because Fenn was known to not give personal hints, Fenn started giving subtle messages to Andersen and the community that someone was on to him and the solve.  See http://mysteriouswritings.com/six-questions-with-forrest-fenn-and-the-thrill-of-the-chase-treasure-hunt-double-charmed/

40.     At this time, Andersen got excited about her potential to solve the puzzle and ordered the books.  In March 2018, immediately prior to her first trip, Andersen ordered the first two books hoping that they would help give her the key to honing in on the precise area of the treasure chest location.  After reading the Thrill of the Chase (having already extensively read the

blogs for at least a half of a year), Andersen found the "key"[4] to unlocking the puzzle and approximately two the clues.  In March 2018, Andersen believed that she had bypassed almost all of the first eight clues and hit the 9th clue by "reverse engineering" the poem so- to- speak. Andersen then left for New Mexico without telling Fenn in order to surprise him for her first trip in late March 2018.  (In retrospect, Andersen believes that she figured out the eighth clue (not ninth clue) prior to leaving for New Mexico in March 2018.)

41.     In addition, in early March 2018, Andersen got a series of anonymous e-mails from a "Sand Sanders" relative to her *Monell* claims in her false arrest case and addressing how the current Chief of police for the Village of Glenview was involved in a perjury scandal called "Bambigate" that ultimately led to his termination in Rockford, Illinois.  Andersen suspected that "Sand Sanders" was Fenn or someone who worked for Fenn given that (a) no one else would have cared about Andersen to initiate such detailed research; (b) "Sand Sanders" relates to the sandy, desolate search area that is also alluded to in the Thrill of the Chase's reference to Second Fig by Edna St. Vincent Millay.  See https://www.youtube.com/watch?v=2QflTxYsAWg  A copy of one of the e-mails by "Sand Sanders" relative to Andersen's *Monell* claim by "Sand Sanders"[5] is attached hereto as Exhibit A and is incorporated herein by reference.  At this point, Andersen suspected that Fenn had retained a private investigator relative to Andersen.

42.     When Andersen left for New Mexico on her first trip in late March 2018, Andersen then started sending e-mails to Fenn.  Her first was from the Amtrak train station in Chicago to let him know generally where she was going….namely New Mexico.  At the time, Andersen used props with pictures on same as to how she came to her conclusion.  Once in the area, Andersen

---

[4]     The "key" to unlocking the puzzle is actually an example of a sleight of hand by Fenn. Andersen will explain same in an *in camera* hearing if allowed.
[5]     Andersen often teased Fenn about his absurd and funny sandy/dry choice for his solve location.

then took pictures and would e-mail Fenn with same.  She then started to divulge that she believed

that she knew the end of the solve/poem location.  Andersen did, in fact, happen across a key spot

on this first trip.  Andersen will advise this Court as to what she found in an *in camera* hearing if

allowed.

43.    From 2018, Andersen would communicate either publicly on the blogs or through

e-mails.  Fenn never responded substantively to any of Andersen's e-mails. It took until October

2019 for Andersen to finally figure out where to go from the key spot that she discovered in March

2018.  Andersen drove and hiked to multiple locations in this time frame to take pictures relative

to the clues and explore.

44.    After Andersen's return from New Mexico in early April, Fenn indirectly teased

Andersen by giving an interview with Amtrak magazine talking about a "law student" and  "his"

e-mail:

> Fenn recently received an email from a law student, who was only just
> learning of Fenn's treasure. He thanked Fenn "for reminding me of a part
> of who I am that has waned greatly during the last years of my legal studies.
> I have had the opportunity to live abroad and travel widely. But now, after
> law school—a black hole of creativity and childish adventure—I feel old
> and defeated much more often than I should."

> Fenn responded with an impassioned plea that offered more clues to his real
> intentions than any of the secrets hidden in his poem. He told the man,
> "Don't you dare work as a lawyer," even if that career brings financial
> security. "If you do, you will wear a coat and tie, sit at a desk all day," Fenn
> wrote. "You will not have time to smell the sky or experience the soft breeze
> ripe with sun. Go looking for my chest full of gold and all of the other
> treasures that lurk once you leave the florescent lights behind."

45.    The above and his writings on Mysterious Writings and DalNeitzel's site (called

"scrapbooks") was Fenn's way of encouraging Andersen after her initial Spring 2018 trip.  This is

also when Fenn amended his third book "Once Upon Awhile" and included the "Dizzy" Dean

story.  See https://dalneitzel.com/2018/06/21/scrapbook-one-hundred-eighty-eight/  After this, the above blogs started going crazy that someone was close.

46.     At some point in this 2018 time frame, Andersen joined the Mysterious Writing blog under the name "Willowtree". Andersen was watching for Fenn to pop up in one of his hidden characters again.

47.     And he did.  It was at this point in time that Andersen came out of hiding and started chatting with Fenn publically.  After Andersen's May trip (which she did not give advance notice to Fenn), Andersen found out on the Mysterious Writing blog that she was being filmed.  Andersen went to go look for these postings; for unknown reasons, the blog postings have been deleted. Andersen will request same in discovery herein.

48.     Specifically, because she did not pre-announce her arrival, a stranger drove up to this remote area.  Andersen believes that this was one of Fenn's camera people who had not prepared for Andersen's unannounced arrival.

49.     When Andersen returned home after this May 2018 trip, Andersen found out that she was in fact being filmed because Fenn (in a hidden character) started teasing Andersen about her eating cheetos and other embarrassing/funny matters relative to her March/May 2018 searching.  There was also a suggestion that some beer drinking local people had followed Andersen and/or searched after Andersen left.  Fenn posted a funny video similar to this https://www.youtube.com/watch?v=0VOe5VBNXpc on Mysterious Writing to assure Andersen that the beer drinking "fish"[6] who had followed Andersen were unsuccessful in their cheating.

50.     After this May 2018 incident, Andersen became very protective of her searching/solve progress.

_____

[6]     Fishing is a theme through the relevant books.

51.     Between May 2018 and October 2019, Andersen then went back to solve the balance of the poem and figure out the second stage of the solve.   Andersen also then figured out what clue she had missed in the area that she had happened across in her late March 2018 trip.

52.     After finding the general location, Andersen incurred substantial monies and time (months each year) physically looking for the treasure.   During that time period, Andersen never saw any searcher.   The road that is closest to Andersen's primary search location is very poorly maintained and is largely avoided except by local residents.   Andersen would camp or stay with local residents during her lengthy search trips from March 2018 until June 2020.

53.     Over the years, in addition to the above, Fenn quietly acknowledged Andersen as the solver of the poem/puzzle.   Sample references can be found in his Rooster Cogburn scrapbook, his reference to Bohemian (Andersen is Czech), his reference to "doctor/lawyer" (Andersen's ex-husband is a doctor), his reference to "barb" in a scrapbook, his reference to a boa (Andersen wore one in an old law firm photo), his reference to a mom searcher and several other examples.   Further, Fenn is fully aware that Andersen was the actual solver of the poem and has been so for some time while attempting to find the precise spot.

54.     Fenn has likely hundreds of e-mails from Andersen, including photographs relative to almost all of the nine of the clues/answers as well as relative to finding the physical location.   Conversely, upon information and belief, Jack Stuef came out of "left field" with his solve that he stole from Andersen and has sparse, substantive communications to Fenn.

**The Strange Pranking Messages**

55.     Initially, as alleged in the original complaint herein, Andersen believed that she had been hacked.   At this juncture, now that spoof writer Stuef has come forward with his absurd story about the end, it appears that Stuef may be part of a prank ending against Andersen.   Counsel for

Stuef and the Fenn estate will not answer Andersen as to who has been pranking Andersen relative to the "Find".  Upon information and belief, the attorneys for Stuef and the Fenn estate know who was pranking Andersen in May/June of 2020.

56.     At this juncture, Andersen alleges: (a) that she was either hacked by Stuef or, alternatively, that Stuef is participating in a prank ending with the Fenn family against Andersen; (b) Stuef improperly claims ownership of the treasure chest; (c) Stuef improperly claims possession of the treasure chest; (d) Andersen is the true solver of the Fenn puzzle/poem; (e) Andersen is the rightful owner of the treasure chest in light of the fact that she is the true solver of the poem.

57.     Specifically, Andersen started receiving prank messages in 2019.  These text messages did not relate to the "Chase".  However, this person knew facts relative to Andersen's personal life, her personal and professional cases, and her false arrest by her ex-husband.  Andersen did not save these 2019 texts because she considered them mostly as nonsense, funny and not threatening and had nothing to do with the "Chase".   Upon information and belief, the person who sent them was either Stuef or, alternatively, someone working with Stuef under Fenn's team.  At the time, Andersen just assumed that someone was investigating her because of her progress relative to solving the Fenn poem/puzzle. Andersen did not feel threatened by same.

58.     Then in approximately the summer of 2019, the prankster disappeared until May 2020 when Andersen reached New Mexico for her most recent, pre-"Find" searching trip.  Again, until the June 2020 "Find" announcement, Andersen just assumed that she was being pranked by someone working for Fenn.

59.     When Fenn and counsel refused to response to Andersen as to the "Find" announcement, Andersen believed that she was hacked.  This time, the prankster knew only facts

relative to Andersen's solve and searching… which only Forrest Fenn should have known from e-mail correspondence.  For example, the prankster knew: (a) Andersen wore costumes and (b) about her run-ins with violent persons that Andersen nicknamed "Bonnie and Clyde".  This appears to be the same person or group of persons pranking Andersen in Dockets 34-36 and 41 herein under the name of Kathryn.  Only Fenn knew about Andersen's "Cerberus" reference via Andersen's e-mail communications.

60.     Sample call log and June 2020 prank text correspondence are attached hereto as Exhibits B-C and are incorporated herein by reference.  Upon information and belief, either Stuef sent same or, alternatively, someone working for or with Forrest Fenn.

61.     To date, counsel for Stuef and the Fenn family refuse to advise Andersen as to whether she was hacked or, conversely, being pranked.   However, what is clear is that the recent, unverified story of the "Find" of Stuef and the Fenn family is nonsense.  Upon information and belief, Stuef is lying to the press about not hacking Andersen.  Alternatively, Stuef is acting in concert with the Fenn family as part of a prank/hoax ending against Andersen.

**Stuef Violated the Anti-Hacking Statute (Plead in the Alternative to the Below Unjust Enrichment Claim)**

62.     At all times relevant hereto, there existed the Computer Fraud and Abuse Act, 18 U.S.C. §1030 that prohibits the unauthorized accessing of protected computers with the intent to either obtain information, further a fraud or damage a computer and its data. 18 U.S.C. § 1030(g) allows for private persons who have been damaged in excess of $5,000 or more to seek monetary and/or injunctive relief pursuant to same. 18 U.S.C. § 1030(g) states as follows:

> (g)Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the

factors set forth in subclauses [5] (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage. No action may be brought under this subsection for the negligent design or manufacture of computer hardware, computer software, or firmware.

18 U.S.C. § 1030(g).

63.    Andersen's computer and her e-mail communications to Forrest Fenn fall within the definition of a protected computer for purposes of the Computer Fraud and Abuse Act.

64.    Upon information and belief, based on the evidence to date and the refusal of counsel to clarify what is going on here and the absurd story of Stuef and the Fenn family, Andersen alleges that Stuef hacked Andersen's e-mails and improperly claims ownership in the treasure chest.

65.    There is no good faith question that the solve location was where Andersen was searching in June 2020 in New Mexico.

66.    Andersen did not prank herself and/or solicit any third party to prank her.  The source of the prank text messages was either Stuef or, alternatively, someone working with or for Forrest Fenn.

67.    Upon information and belief, the value of the chest and its contents is millions of dollars if sold/auctioned.

68.    Wherefore, Andersen requests that this Court take the following relief:

(a)    To enjoin Stuef from selling and/or auctioning the treasure;
(b)    To order Stuef to turn over the treasure chest to Andersen as the true solver of the Fenn puzzle/poem;
(c)    To order monetary damages for any of the assets removed from the treasure chest; and
(d)    To order costs against Stuef associated with this litigation.

**COUNT II- UNJUST ENRICHMENT**
**(PLEAD IN THE ALTERNATIVE TO COUNT I)**

69.    Andersen reincorporates paragraphs 1 through 68 as paragraph 69 of Count II.  This Count is plead in the alternative to Count I.

70.    In the event that Stuef did not actually hack Andersen, then upon information and belief Stuef is a member of Fenn's team relative to the Chase and a participant in the prank ending relative to Andersen.

71.    For example, upon information and belief, the post-"Find" announcements tease and taunt Andersen.  For example, post-"Find" there are:

    a.  Multiple references to Andersen's false arrest (also alluded to in recently released Taylor Swift songs);

    b.  Multiple legal references contained in the "Find" articles (also alluded to in recently released Taylor Swift songs);

    c.  Several allusions to Andersen's solve and relationship with Fenn in recently released Taylor Swift songs'

    d.  The teasing by Dal Neitzel on his blog to "Rag" [initials of Andersen's ex-husband] and the deletion of the blog immediately prior to Andersen's effort to secure a subpoena herein;

    e.  The teasing of Andersen being "pale" relative to Fenn;

    f.  The emerald ring reference as noted *supra* and in (sealed) Dkt 41;

    g.  Fenn's post-"Find" articles, i.e. the "Squirt" etc. and his allusion to Andersen's jokes (i.e. "rakish", "genius", "melancholy", etc.); and

    h.  Andersen's "King Tut" joke .
https://www.youtube.com/watch?v=FYbavuReVF4

72.     Upon information and belief, Andersen is the true solver of the Fenn puzzle/poem.  Conversely, upon information and belief, Stuef is not the true solver of the Fenn puzzle/poem.

73.    Upon information and belief, Stuef improperly claims ownership and possession of the treasure chest.  Upon information and belief, Andersen should be the owner and possessor of the treasure chest in light of the fact that she solved the Fenn puzzle/poem.

74.     To date, Stuef and the Fenn estate/family have not tendered the chest to Andersen despite Andersen's demand for same.

75.     In addition, Stuef and the Fenn estate/family have been secretive as to whether a book and/or movie is being made.  Andersen's request for information relative to same has been ignored to date by counsel.

76.     As such, in the alternative to Count I, Andersen claims that Stuef is unjustly being enriched by (a) retaining the treasure chest and (b) otherwise monetizing off of Andersen's solve and proprietary information/rights.

77.     Stuef has already admitted ties to at least one book-writer as noted in paragraph 26 *supra*.

78.     It is unclear at this juncture as to whether Stuef's (and/or Fenn's family) activities involve Andersen given that counsel for Stuef and Fenn will not respond to Andersen's communications on the subject.

79.     Andersen intended to use the treasure chest, her solve and her efforts for charitable and other efforts.

        Wherefore, Andersen requests that this Court:

        a.  Enter judgment in favor of Andersen and against Stuef as the solver of the Fenn puzzle/poem;
        b.  Enjoin the sale of the treasure chest while this litigation is resolved;
        c.  Order the turnover of the treasure chest that Stuef claims to own and possess to Andersen or, alternatively its monetary value;
        d.  Enter judgment for any monetary benefit that Stuef is receiving relative to Andersen's solve and/or proprietary information/rights; and
        e.  Such other relief as this Court deems necessary and just.

Respectfully submitted:

Barbara Andersen

   /s/ Barbara Andersen

Barbara Andersen, 6256000
1220 West Sherwin, Unit 1E
Chicago, IL 60626
(708) 805-1123
bandersen@andersen-law.com

VERIFICATION

1.      I, Barbara Andersen, verify that I personally prepared the above complaint.  If called to

testify, I would testify as contained therein.

2.      I have personal knowledge of the allegations contained in the above, verified complaint

except for when plead "upon information and belief", "to the best of my recollection" or other

commentary to that effect.

3.      I verify the complaint under penalty of perjury that the statements contained therein are

true and correct.


/s/ Barbara Andersen, plaintiff and attorney
December 30, 2020